**In re Gerald Michael MADISON, Debtor.**

**Civ. No. 93–00954MP.**

United States District Court,
D. Hawai'i.

March 8, 1994.

Dawn Smith, Honolulu, HI, for debtor.

Thomas J. Sawyer, U.S. Dept. of Justice, Trial Atty., Tax Div., Washington, DC, and Carol Muranaka, IRS Dist. Counsel, Honolulu, HI, for U.S.

Howard M.S. Hu, Trustee, Honolulu, HI.

## ORDER AFFIRMING DENIAL OF CONFIRMATION OF PLAN AND DISMISSAL OF CHAPTER 13 BANKRUPTCY PETITION

PENCE, Senior District Judge.

Debtor Gerald Michael Madison ("Appellant"), appeals the bankruptcy court's Order, entered October 12, 1993, denying confirmation of his Chapter 13 plan, and Order, entered November 3, 1993, dismissing his voluntary Chapter 13 bankruptcy petition. The Order denying confirmation of appellant's Chapter 13 plan was predicated on the court's determination that the appellant's noncontingent, liquidated, and unsecured debts exceeded $100,000, thereby rendering him ineligible, under § 109(e), for relief under the Bankruptcy Code.

BACKGROUND

Appellant was an airline pilot employed by Northwest Airlines during the period 1982 to 1985. Simultaneously, appellant conducted a business selling Amway products and earned reportable income from that business. Appellant failed to file his federal income tax returns for the years 1982 to 1985, inclusive. By jury verdict, he was convicted of tax evasion. A criminal judgment was entered April 20, 1990.

As a result of his tax evasion conviction, appellant filed his delinquent tax returns. Based on his returns as filed, it was determined that appellant owed $27,985.91 in taxes for the years 1984 and 1985. Subsequently, the Internal Revenue Service ("IRS") determined that the appellant's tax returns were inaccurate and, on August 14, 1991, pursuant to I.R.C. § 6212, issued a tax deficiency notice for the years at issue, to include additional taxes, fraud penalties, and substantial understatement penalties. The deficiencies represented understated income attributable to appellant's Amway business, as well as interest, dividend, and capital gains income, and the resultant additional taxes and penalties were therefore deemed appropriate.

On November 12, 1991, appellant filed a petition in the United States Tax Court (*Gerald M. Madison v. Commissioner*, Docket No. 26048–91) contesting the income tax defi-

ciencies. Trial was scheduled to commence in Tampa, Florida, on April 26, 1993, but on April 21, 1993, just three days before the commencement of trial, appellant filed his Chapter 13 bankruptcy, which effectively triggered an automatic stay of the trial proceedings. By order entered August 30, 1993, the bankruptcy court granted the IRS' request for relief from the automatic stay, and trial will commence sometime in 1994.

On April 29, 1993 the IRS filed its proof of claim in the appellant's bankruptcy case listing a secured claim of $27,985.91, representing taxes and interest owed by the appellant for the tax years 1984 and 1985. The IRS filed three subsequent amendments to its proof of claim: (1) on May 3, 1993, an unsecured priority claim of $113.822 for additional income taxes for the period 1982 to 1985, inclusive; (2) on May 17, 1993, an unsecured general claim of $107,056 representing fraud penalty in accordance with 26 U.S.C. § 6653(b)(1), an undetermined amount for fraud penalty interest in accordance with 26 U.S.C. § 6653(b)(2), and an unsecured general claim of $28,455 for substantial understatement penalty in accordance with 26 U.S.C. § 6661; and (3) on September 14, 1993, an unsecured general claim of $73,870.73 representing estimated fraud penalty interest in accordance with 26 U.S.C. § 6653(b)(2). This latest claim thus set forth the amount previously undetermined by the IRS in its May 17, 1993 claim.

In his bankruptcy schedules, appellant listed unsecured debts totaling $75,355. Included in the $75,355 was $30,000 in taxes owing for the period 1982 to 1987, inclusive. Listed as "unknown-unliquidated" but excluded from the $75,355 figure, however, were additional and disputed federal taxes, interest, as well as fraud and substantial understated penalties for the years 1982 to 1985, inclusive. The amounts were calculated by the IRS at $261,563.46 for additional taxes plus interest, and $209.381.74 for fraud and substantial understated penalties for those years. Appellant listed the additional taxes, interest, and penalties as "unknown-unliquidated", despite the fact that these amounts (with the exception of the fraud penalty interest, which were later set forth in the IRS'

third amendment to its Proof of Claim) had been statutorily noticed by the IRS as deficiencies on August 14, 1991.

Records indicate that appellant's Chapter 13 plan proposed payments of $1,500 per month, or 9% of his 1992 earnings, to the Chapter 13 trustee, and $6,600 to the IRS. Appellant's plan indicated that no creditor was secured in his personal property, and that his computer loan and his automobile lease were excluded from the plan. The IRS objected to appellant's proposed plan and contended that not only was appellant not entitled to Chapter 13 relief because his unsecured debts exceeded $100,000, but that appellant's plan was not filed in good faith. The IRS maintained that at the rate of $1,500 per month for the 36–month period provided under the appellant's proposed plan, appellant would pay only $54,000 toward his nearly $500,000 debt. Even under the appellant's proposed amended plan increasing the payment plan to 60 months, only $90,000 would be paid toward his total debt. The IRS further stated its belief that the appellant opted not to seek Chapter 7 or Chapter 11 protection because he sought to dispose the bulk of his tax liability pursuant to the "superdischage" of a Chapter 13 bankruptcy.

Appellant, however, denied this contention, and stated that the additional taxes and penalties were not only disputed but were subject to protracted and extensive evidentiary hearings in his pending Tax Court proceedings. He insisted that the amounts were unliquidated and thus were excludable from the § 109(e) limitations.

The bankruptcy court was unpersuaded by the appellant's claim that the taxes and penalties were "incalculable", and, unconvinced that the disputed amounts might be lowered sufficiently to an amount beneath the $100,000 limit, denied confirmation of the appellant's plan and dismissed the Chapter 13 bankruptcy. This appeal followed.

ANALYSIS

It is undisputed that on April 21, 1993, when the appellant filed his Chapter 13 petition, his total unsecured debts, exclusive of any disputed understated income and tax due thereon, as well as fraud substantial under-

stated penalties, were $75,355. This amount includes a $30,000 tax liability ($27,985.91, according to IRS' calculations) for the years 1984 and 1985, which resulted from a criminal judgment of tax evasion for the years 1983, 1984, and 1985, inclusive, entered on April 20, 1990.

Following the IRS' subsequent examination of these taxes, on August 14, 1991 the IRS issued a statutory deficiency notice to the appellant for additional taxes and fraud and substantial understatement penalties for understated income attributable to appellant's Amway business, as well as interest, dividend, and capital gains income. The fraud and substantial understatement penalties were calculated pursuant to I.R.C. §§ 6653(b)(1) and (2), and 6661, respectively. These deficiencies and penalties constitute the area of controversy in the appellant's bankruptcy matter.

*Chapters 7 and 13:*

Congress enacted Chapter 13 of the Bankruptcy Code to provide individual debtors with an alternative to liquidating their assets under Chapter 7. Relief under Chapter 13, however, is not available to all debtors. To obtain the benefits of Chapter 13, individuals must satisfy the specific criteria delineated in § 109(e) of the Code:

> Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $100,000 and noncontingent, liquidated, secured debts of less than $350,000, ... may be a debtor under chapter 13 of this title.

*Contingent vs. Noncontingent*

Appellant does not claim that the disputed tax deficiencies are contingent debts.

*Liquidated vs. Unliquidated Debts:*

Insisting that, for purposes of determining Chapter 13 eligibility, the tax liabilities assessed by the IRS are the subject of a bona fide dispute between himself and the IRS and, thus, are unliquidated as of the date he filed his bankruptcy petition, appellant leans on *In re Pennypacker*, 115 B.R. 504 (Bankr. E.D.Pa.1990), *In re Fostvedt*, 823 F.2d 305, 306 (9th Cir.1987), and *In re Wenberg*, 94 B.R. 631, 634 (9th Cir. BAP 1988), *aff'd* 902 F.2d 768 (9th Cir.1990). He persistently claims that the tax deficiencies and penalties, to be classified "liquidated", must be determined with sufficient precision, and must be subject to ready determination and not be subject to protracted and extensive evidentiary hearings to establish the amount of liability.

While it is true that the courts are in general agreement that debts are "liquidated" when the amount of liability can be readily determined with sufficient precision in computation, the cases cited by the appellant do not, unfortunately for the appellant, provide a foundation to uphold the appellant's claims. Appellant merely extracted the courts' general statements distinguishing between "liquidated" and "unliquidated" debts. Each of the cases, however, undermines the appellant's position because the eventual findings of the courts were that the disputed debts were liquidated.

In *Pennypacker*, the disputed debts were contractual in nature and represented "claims for goods or services to be paid for at an agreed rate". The court held that "a debt is liquidated if the amount due can be determined with sufficient precision and that debts of a contractual nature, even though disputed, are liquidated within the meaning of § 109(e)". *In re Pennypacker*, supra, at 507.

*Fostvedt* involved debtor's joint and several liability for two promissory notes totaling approximately $170,000. The court found that there was no dispute as to liability or amount; that the debtor was liable for the full amount of the notes regardless of the possibility that his co-obligors would eventually pay some or all of the debt; and concluded that "the debt was liquidated for purposes of section 109(3)". *In re Fostvedt*, supra, at 306.

*Wenberg* dealt with the issue of attorneys' fees and damages. There, the bankruptcy court found that although a claim for damages was "unliquidated because further judicial action was necessary to determine the amount of damages", the award for attorney's fees and costs would be "deemed liquidated because [w]hen the declaratory judg-

ment was entered ... the amount of the attorneys' fees could easily have been ascertained by examining the billing statements." *In re Wenberg,* supra, at 632. On appeal, the bankruptcy court's finding was affirmed, but the case was remanded back to the bankruptcy court to consider an entirely different issue.

The appellant also attempts to bolster his position with *In re King,* 9 B.R. 376 (Bankr. D.Ore.1981) and *In re Lambert,* 43 B.R. 913 (Bankr.D.Utah 1984) by claiming that the court should rely upon the debtor's characterization of a debt in his schedule as disputed and, hence, unliquidated unless the court can make an expeditious determination of the dispute.

*King* concerned itself with three adversarial complaints filed against the debtor. Each complaint sought compensatory, punitive, or special damages of varying amounts. The court found that at the time of the debtor's filing of the motion to convert from Chapter 7 to Chapter 13, substantial disputes remained and neither liability nor amount had yet been determined. The court, therefore, found the claims to be unliquidated.

In *Lambert,* 43 B.R. 913 (Bankr.D.Utah 1984), the court found that the obligations which formed the basis of the claims involved a claim of breach of contract. The court found that bona fide and substantial disputes remained unresolved at the time of the bankruptcy filing and, therefore, were "unliquidated".

■ These two cases differ from the instant case in that, while the appellant insists that the taxes and penalties are subject to protracted and extensive evidentiary hearings in his upcoming tax court case and, therefore, a dispute exists, as a matter of fact the appellant's tax liability and the amounts of the deficiencies have already been determined by the IRS.

The issue of a court's reliance upon the debtor's characterization of a debt in his schedule as disputed and, hence, unliquidated unless an expeditious determination can be made of the dispute, was considered by the court in *In re Pennypacker,* supra, and this

court agrees with the rationale set forth therein:

"We reject these approaches because we find that to the extent that they require total reliance by the court upon the debtor's characterization of the debts in his schedules, we do not believe that the debtor should be given unbridled authority to determine his eligibility for chapter 13 relief. Additionally, to the extent that the minority view requires that the court decide the disputed debts before determining whether the debtor qualifies for chapter 13 relief under § 109(e), it imposes impractical burdens upon the court."

The *Pennypacker* court also cited *In re Vaughan,* 36 B.R. 935 (N.D.Ala.1984), where that court stated:

"Congress sets the limits as to who qualifies to file for bankruptcy under chapter 13. This Court cannot find in any legislative history where Congress contemplated allowing disputed claims to be excluded from the calculation of the maximum allowable debt. This Court can only speculate that any such statutory language would cause a flood of 'disputes' over liabilities which, if allowed to translate a claim into an unliquidated claim could utterly thwart the judicial process in bankruptcy proceedings. It is easy to envision debtors regularly using such a 'dispute' technique as a stalling device. If such a device were given judicial recognition it would create havoc. The unscrupulous would file a chapter 13 petition and then 'dispute' the unsecured debts, force the litigation to continue under chapter 13, and then after months of costly delay the bankruptcy court would find that all had been in vain because the 'disputes' were only imagined...."

■ Lastly, appellant claimed that since civil tax penalties had not been assessed against him by the IRS at the time of the filing of his bankruptcy petition, he was eligible for chapter 13 relief, citing *In re Robertson,* 143 B.R. 76 (Bankr.N.D.Tex.1992). *Robertson* is inapplicable. *Robertson* involved certain penalties under I.R.C. §§ 6700 and 6701 relating to the promotion of illegal tax shelters. There, the court likened the penalties to tort claims. The burden of proof

that an individual is promoting abusive tax shelters and is thus liable for penalties under §§ 6700 and 6701 rests with the IRS. *See United States v. Turner*, 601 F.Supp. 757 (E.D.Wis.1985) Here, the penalties involve additional taxes for fraud and substantial understatement of tax liabilities under I.R.C. §§ 6653(b)(1), 6653(b)(2), and 6661. The IRS determined that not only had the debtor failed to file returns for the taxable years, but when he finally did file those returns, he had substantially understated his taxable income. The Internal Revenue Code provides that under these circumstances, the Commissioner may validly assess additional taxes and the taxpayer has the burden of proving that no part of the underpayment was due to negligence. *Thompson v. C.I.R.*, 78 T.C. 558, 1982 WL 11074 (1982). The IRS' deficiency notice itemized the amounts of the appellant's liabilities. As succinctly stated in *In re Lamar*, 111 B.R. 327, 329 (D.Nev.1990), "a definite sum of money is owed by the debtor to the IRS unless and until the debtor proves otherwise"; and, as concluded in *In re Sylvester*, 19 B.R. 671 (9th Cir. BAP 1982), "so long as the amount of the claim was 'readily ascertainable', it was 'liquidated', regardless of whether the claim was disputed". *See also In re Ristic*, 142 B.R. 856, 861 (Bankr. E.D.Wis.1992); *In re Claypool*, 142 B.R. 753, 755 (Bankr.E.D.Va.1990).

CONCLUSION

The IRS' claim for federal income tax deficiencies and penalties for the taxable years 1982 through 1985, inclusive, are liquidated and must be included in calculating whether the appellant exceeded the $100,000 limitation on eligibility for Chapter 13 relief. With the inclusion of these deficiencies, the debtor owed more than $100,000 in noncontingent, liquidated, unsecured debts on the date he filed his bankruptcy petition, and he is ineligible for relief under Chapter 13. The bankruptcy court's Orders denying confirmation of the appellant's Chapter 13 plan and dismissal of his Chapter 13 bankruptcy are AFFIRMED.

IT IS SO ORDERED.