In re John J. McGARRY, Debtor.

Gary J. Gaertner, Chapter
13 Trustee, Movant,

v.

John J. McGarry, Respondent.

The Estate of Walnut Equipment Leasing Co., Inc., Equipment Leasing Corp. of America, and its Official Committee of Unsecured Creditors, Movants,

v.

John J. McGarry, Respondent.

John J. McGarry, Movant,

v.

Geraldine M. Rosendahl, Respondent.

John J. McGarry, Movant,

v.

Henry Plyler, Respondent.

John J. McGarry, Movant,

v.

Elk Township, Respondent.

Bankruptcy No. 97–11732.
Motion Nos. CTT–1, PH–2, SHH–
29, SHH–35, SHH–45.

United States Bankruptcy Court,
W.D. Pennsylvania.

Feb. 25, 1999.

Stephen H. Hutzelman, Erie, PA, for debtor.

Gary J. Gaertner, Pittsburgh, PA, Chapter 13 trustee.

Timothy R. Bevevino, Warren, PA, for Elk Township.

Stephen W. French, Brookville, PA, for Henry Plyler.

H. Robert Hampton, Warren, PA, for Geraldine M. Rosendahl.

Marvin S. Lieber, Pittsburgh, PA, for Walnut Leasing Co., Inc. and Leasing Company, Inc. and Equipment Leasing Corp. of America.

George P. Medved, Pittsburgh, PA, for Official Committee of Unsecured Creditors of the Estate of Walnut Leasing Co., Inc. and Leasing Company, Inc. and Equipment Leasing Corp. of America.

*OPINION*

WARREN W. BENTZ, Bankruptcy Judge.

John J. McGarry ("Debtor") filed a voluntary Petition under Chapter 13 of the Bankruptcy Code on November 14, 1997. The Debtor's bankruptcy schedules list 95 general unsecured creditors holding $2,012,560.85 in claims.[1] All but four of the claims which total $34,990.10 are listed as contingent and disputed. Seven of the listed creditors with claims which total $159,228.75 were originally shown as unliquidated. The Debtor has since amended his schedules and now asserts that substantially all of the claims are unliquidated.

Debtor filed a proposed Chapter 13 Plan on December 31, 1997 (the "Plan"). Gary J. Gaertner, Esq. ("Trustee"), the Chapter 13 Trustee, filed objections to confirmation of the Plan as did the Estate of Walnut Equipment Leasing Co., Inc., Equipment Leasing Corp. of America, and its Official Committee of Unsecured Creditors (collectively, "EL-

---

**1.** Debtor has subsequently filed Amendments to Schedule F which add additional unsecured creditors.

COA"). The Trustee raises numerous objections, the principal objection being that the Debtor is ineligible for Chapter 13 relief as his noncontingent, liquidated unsecured debt exceeds the limit of $250,000 under § 109 of the Bankruptcy Code.[2] To date, the Trustee has received proofs of claim which total $900,000. ELCOA asserts, inter alia, that the Debtor is ineligible for Chapter 13 relief under § 109, and that the Debtor's Chapter 13 filing was in bad faith.

A hearing on plan confirmation was held on March 27, 1998 at which time issues of eligibility and bad faith were discussed. The Court determined that it would be prudent to examine the validity of certain claims prior to rendering a decision on the Debtor's eligibility for a Chapter 13 filing and by Order dated April 1, 1998, directed the Debtor to file its objections to claims.

It appears that prior to the bankruptcy filing, Debtor worked as an independent stockbroker and was affiliated with First Allied Securities Inc. ("First Allied"). The Debtor sold securities in ELCOA. ELCOA is now a debtor in a Chapter 11 case pending in the Eastern District of Pennsylvania. The Trustee has reviewed information from First Allied that states that the Debtor was not authorized by First Allied to recommend or sell the ELCOA investment.

The bulk of the claims in this case (91 of the 95 listed by the Debtor with total claims of approximately $2 million dollars) are by investors who claim losses on their investments. As directed, the Debtor filed objections to certain of the claims filed in this case. Three of the respondents (at Motion Nos. SHH–29, SHH–35 and SHH–45) are represented by counsel and the Court has elected to proceed first with those objections.

In each of its objections to claims, Debtor acknowledges that the claims arise from purchases in securities of ELCOA made through the services of the Debtor. Debtor states that his services were as a registered representative, who had an office in Warren, Pennsylvania. Debtor asserts that he relied on information and directions from ELCOA in presenting ELCOA securities for possible purchase; that at or about the time of purchase, Debtor met with the Respondents, determined their investment objectives, explored options for investment, explained that the ELCOA investment had greater risk than lower return investments, and that the ELCOA investment was not insured. Debtor further asserts that he was not an insurer or guarantor of the investment; that the claims are not liquidated; and that Debtor is not responsible for the loss Respondents expect to sustain in ELCOA.

In Responses to the Objections to their claims, the Respondents deny any knowledge with respect to what information and directions the Debtor relied on; Respondents deny Debtor explored various investment options; Respondents assert that Debtor advised that the ELCOA investment was extremely safe and that there was no risk, and that the investment was insured; that the claim amounts are specifically known or can be readily ascertained; and that Debtor is responsible for the losses to Respondents as he sold risky ELCOA securities fraudulently, intentionally, and with wanton and reckless disregard of Respondents' financial needs; that Debtor breached his fiduciary duties; and that in the marketing of an unregistered or inappropriate security, Debtor violated both federal and state securities laws.

A hearing on the objections to claims was held June 26, 1998. Counsel for Elk Township was directed to and has filed a Brief in support of its position. In the Brief, Elk Township sets forth its theories of recovery as "fraud/intentional misrepresentation; negligent misrepresentation, and violation of Pennsylvania securities law."

The issue which we must address at the present time is whether the Debtor is eligible for Chapter 13 relief under § 109(e).

Section 109(e) provides:

(e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000, or an individual with regular income and such individual's

2. Unless otherwise indicated, all Code sections refer to Title 11 of the United States Code.

spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $250,000 and noncontingent, liquidated, secured debts of less than $750,000 may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e).

Debtor lists obligations many times in excess of the Chapter 13 limits, but asserts that he remains eligible for Chapter 13 relief because all of the claims are disputed, contingent and unliquidated.

■■■ Disputed, noncontingent and liquidated debts count toward the debt limitation for Chapter 13 eligibility. *In re Mazzeo,* 131 F.3d 295 (2d Cir.1997); *In re Barcal,* 213 B.R. 1008 (8th Cir. BAP 1997); *In re Nicholes,* 184 B.R. 82 (9th Cir. BAP 1995). Contingent liabilities are those which rely on some future extrinsic event to trigger liability. *Id.* An obligation is noncontingent when all of the events giving rise to liability for the debt occurred prior to a debtor's bankruptcy filing. *Id.* Here, all events giving rise to the Debtor's liability occurred prepetition. The Debtor's obligations are not contingent.

The more difficult question is whether the Debtor's obligations are liquidated.

■■ "[T]he key factor in distinguishing liquidated from unliquidated claims is ... whether the process for determining the claim is fixed, certain, or otherwise determined by a specific standard." *In re Barcal,* 213 B.R. 1008, 1014 (8th Cir. BAP 1997).

■■ The theories of damages against the Debtor, as set forth in the Elk Township Brief, are for a) Common Law Fraud/Intentional Misrepresentation; b) Negligent Misrepresentation; and c) Violation of Pennsylvania Securities Law. The measure of damages for both intentional misrepresentation and negligent misrepresentation are the same. Elk Township states that its "loss in this regard is measured by the difference between a consideration paid for the property and its true market value, as of the date of sale." Elk Township also points out that "[I]n cases involving the

sale of securities, it has been held in Pennsylvania that the Plaintiff may recover the difference between what the Plaintiff intended to pay for the securities and their actual value at the time of purchase."

Debtor asserts that to make these calculations would require extensive testimony and a great deal of work to determine the proper amount of damages as to each claimant. We acknowledge that such calculations may be time-consuming and difficult, but the amount of the claims is determined by reference to a specific standard and, therefore, for purposes of determining eligibility for Chapter 13 relief, the claims must be counted as liquidated.

In making this determination, we have not decided the merits of the claims against the Debtor. As stated in *In re Barcal,* 213 B.R. at 1015:

The Debtor lastly contends that the court erred in failing to conduct a full evidentiary hearing to determine the amount of his tax liabilities and in failing to fully consider the merits of his objections to the Service's proof of claim. We hold that the court appropriately refused to resolve the tax dispute or determine the merits of the tax claim, and we further conclude that the court's canvassing of the evidence at hearing on the Motion to Dismiss constituted an appropriate review of the claims for § 109(e) eligibility purposes. The purpose of Chapter 13 debt limitations is "to limit the availability of a Chapter 13 adjustment of debts to individual wage earners and 'small sole proprietor[s], for whom a chapter 11 reorganization is too cumbersome a procedure.'" *In re Albano,* 55 B.R. 363, 365 (N.D.Ill.1985), quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 319–20, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6276–77. Such limited eligibility is intended to implement the expeditious administration of Chapter 13 reorganizations. To require the bankruptcy court to decide the merits of disputed claims before determining eligibility imposes an impractical burden and delay upon the Chapter 13 court. *In re Madison,* 168 B.R. 986, 989 (D.Hawai'i 1994). Alternatively, it has been said that requiring the bankruptcy court to pass on the merits of all claims

before the proceeding could even get under way, would generate a circular and self-defeating barrier to the prompt administration of Chapter 13 proceedings. *In re Albano*, 55 B.R. at 368. See *Comprehensive Accounting Corp. v. Pearson*, 773 F.2d at 751, 756 (6th Cir.1985). Thus, the bankruptcy court was not obligated to fully determine the amount of the tax claims, and in fact, to do so would have been contrary to Chapter 13 policy of expediency.

Rather than making final determinations on disputed liabilities, it is appropriate for a court considering eligibility to rely primarily upon a debtor's schedules and proofs of claim, checking only to see if these documents were filed in good faith. *Comprehensive Accounting Corp.*, 773 F.2d at 756. In so doing, however, the court should neither place total reliance upon a debtor's characterization of a debt nor rely unquestionably on a creditor's proof of claim, for to do so would place eligibility in control of either the debtor or the creditor. *In re Madison*, 168 B.R. at 989. At a hearing on eligibility, the court should thus, canvass and review the debtor's schedules and proofs of claim, as well as other evidence offered by a debtor or the creditor to decide only whether the good faith, facial amount of the debtor's liquidated and non-contingent debts exceed statutory limits.

*Id.*

We have reviewed the Debtor's schedules, the proofs of claim filed in the case, and considered the briefs and the arguments of the parties to conclude that the debts exceed the limits of § 109(e).

■ The lack of good faith in filing is sufficient cause for dismissal under § 1307(c). *In re Lilley*, 91 F.3d 491, 496 (3d Cir.1996). The good faith or lack thereof is assessed on a case-by-case basis in light of the totality of the circumstances. *Id.* Factors relevant to the totality of the circumstances inquiry may include, among others, the following:

the nature of the debt ...; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*Id.*, quoting *In re Love*, 957 F.2d 1350, 1357 (7th Cir.1992).

Having determined that the Debtor fails to meet the eligibility requirements of § 109(e), we need not address the good faith issue, but note that if allegations raised by creditors in this case were proven, the issue of the Debtor's good faith would merit close examination.

The Debtor will be given a short period of time to elect conversion of the within case to a different chapter of the Bankruptcy Code, in default of which, the case will be dismissed. An appropriate Order will be entered.