**In re Akemi Takayama WIENCKO, Debtor.**

**In re Clyde T. Shaw and Doris Lederer, Debtors.**

**Nos. 7–01–05219, 7–01–05217.**

United States Bankruptcy Court,
W.D. Virginia,
Roanoke Division.

April 3, 2002.

774

Howard J. Beck, Roanoke, VA, for debtor.

Rebecca Connelly, Roanoke, VA, trustee.

## DECISION and ORDER

Ross W. KRUMM, Chief Judge.

Before the court are amended motions to dismiss Chapter 13 petitions of debtors and amended motions for entry of orders determining that certain state court orders are null and void. For the reasons that follow, the motion to dismiss will be granted and the motion for entry of an order nullifying and avoiding state court orders will be dismissed as moot.

## BACKGROUND

In 1974, Clyde T. Shaw ("Shaw") founded the Audubon Quartet ("Quartet"). Membership in the Quartet varied over the years. In 1976 and 1997, Doris Lederer ("Lederer") and Akemi Takayama Wiencko ("Wiencko") joined the Quartet, respectively. The above three members constitute the current composition of the Quartet and will be referred to hereinafter as "Quartet Members."[1] David Ehrlich ("Ehrlich") was also a member of the Quartet. He joined the Quartet in 1984.

Allegedly, as early as the 1980s, Ehrlich and the Quartet Members could not agree on the artistic direction of the Quartet. Believing that the differences were irreconcilable, on February 21, 2000, Shaw notified Ehrlich by letter that he was being removed from the Quartet by the other members. Ehrlich responded with litigation.[2]

One law suit in particular was filed on May 30, 2000, in the Court of Common Pleas of Allegheny County, Pennsylvania. In this suit, Ehrlich sought an injunction against the Quartet Members to prevent them from having corporate meetings, from utilizing corporate assets, and from performing as a musical group. Ehrlich also requested that a custodian be appointed for the corporation.

On or about October 15, 2001,[3] the Allegheny County Court of Common Pleas entered an adjudication. The adjudication issued consisted of two separate documents entitled (1) Opinion and Adjudica-

---

1. The court is aware that referring to the current members as a quartet is not, numerically speaking, accurate, but despite the formal lack of numerosity this trio of virtuosos continues to play under the name Audubon Quartet. *See* Information on Transition, In Support of the Audubon Quartet *at* http://exit118.com/~audubon (visited Feb. 27, 2002) (stating that the Audubon Quartet performed a free concert at the Lyric Theatre in Blacksburg, Virginia on January 22, 2002).

2. In total, Ehrlich filed three law suits against the Quartet Members and the Quartet. The first suit was filed in the Circuit Court of Montgomery County, Virginia, Case No. V–14980 and was dismissed on February 22, 2001. The second suit was filed in Pennsylvania. *See infra* p. ——. The third suit was filed in the Circuit Court of Montgomery County, Case No. V–13837. The third suit is still pending.

3. Ehrlich alleges the date of this order to be October 12, 2001. There seems to be no consensus as to exact dates of proceedings in or orders entered by the state court. The discrepancies in the cited dates are not relevant and the court will adopt and use the dates proffered by the Quartet Members.

tion and (2) Decree Nisi. Relevant to the proceedings here is the Decree Nisi, which directed the Quartet and the Quartet members to jointly and severally pay Ehrlich $611,119.24. The decree nisi states that it "is issued pursuant to PA Rule of Civil Procedure 1517 and shall be final unless appropriate Post–Trial Relief, pursuant to Rule 227.1, is sought within 10 days after the filing of this Decree."

On October 22, 2001, Ehrlich filed a post-trial motion pursuant to Pa. Rule 227.1 and requested the court to modify the decree nisi to: (1) grant Ehrlich access to a power point program; (2) direct the Quartet Members to comply with an arrangement regarding musical scores; (3) compel Shaw to transfer the trade name "Audubon Quartet" to the Quartet; (4) require all defendants to pay additional attorney's fees, costs, and expenses that Ehrlich may incur in connection with this case in all jurisdictions; (5) keep an injunction in tact until Ehrlich's entire judgment is paid; (6) direct the prothonotary to enter judgment in favor of Ehrlich; (7) order that all defendants will be jointly and severally liable for custodian fees, costs, and expenses; and (8) modify the facts in the adjudication to reflect that Shaw, Lederer, and Wiencko are no longer employed at Virginia Tech.

In addition to filing a response to Ehrlich's post-trial motion, the Quartet Members filed their own post-trial motion on October 26, 2001.[4] They too requested post-trial relief and asked the court to (1) enter an order admitting certain exhibits into the record, (2) modify the decree pertaining to ownership of the power point program, and (3) dissolve a preliminary injunction. A hearing was held on these post trial motions on November 28, 2001.

On November 30, 2001, the Quartet and the Quartet Members filed a supplemental motion for post-trial relief. In this motion the parties requested leave to file this late post-trial motion which noted numerous exceptions to the court's adjudication and decree nisi and which drew into question the propriety of the money judgment awarded to Ehrlich. On December 5 and December 6, 2001, the court denied the supplemental motion for post-trial relief as untimely filed.

On December 12, 2001, the Quartet Members and the Quartet filed petitions in bankruptcy, Chapter 13 and Chapter 7 respectively. The putative debtors mailed a notice of the bankruptcy filings to the Pennsylvania court on December 18, 2001. The notice was filed on the records of the state court case on December 21, 2001. On that same date, the court in Pennsylvania entered an Adjudication and Final Decree, awarding Ehrlich a judgment in the amount of $611,119.24 and dissolving the injunction imposed on the Quartet Members.[5] On or about January 8, 2002, the court also ordered the Quartet and the Quartet Members to pay the fees, costs, and expenses of a court appointed custodian.

It appears that sometime around December 31, 2001, the Quartet Members and the Quartet filed a third motion for post-trial relief. This motion addressed the December 21, 2001 Adjudication and Final Decree. According to the Quartet

---

4. The Audubon Quartet, Inc. was not a movant in this motion, which appears to be the only timely filed post-trial motion of the defendants.

5. Ehrlich contends the decision was handed down on December 20, 2001. It is not relevant to this case whether the decision was

entered on the 20th or the 21st because both dates were post-petition and the state court's notice of the bankruptcy proceedings in no way impacts the operation of the automatic stay. By its very terms, the automatic stay operates automatically-awareness that a petition was filed is not a prerequisite to the operation of 11 U.S.C. § 362.

Members, this motion was filed to inform the state court of the bankruptcy filings and to preserve the record for appeal.[6] On January 11, 2002, the court released a memorandum order denying the Quartet Member's last motion for post-trial relief. In the memorandum order the state court reiterates the procedural events and decisions in the case and further states:

The Prothonotary's record shows that a suggestion of bankruptcy was filed by all Defendants on December 21, 2001, the day after I entered my Final Decree. Since my Final Decree was indeed, a "final" order, the pending bankruptcy has no impact on my disposition of the case. Moreover, the Suggestion of Bankruptcy was never served on me.

Ehrlich v. Audubon Quartet, Inc., Case No. GD 00–9438 (Ct.Com.Pl. Jan. 11, 2002) (Memorandum Order).

The Quartet Members argue that the adjudication (particularly the decree nisi) entered on October 15, 2001 was a provisional order and they refer to it as such throughout their pleadings. They further argue that the Adjudication and Final Decree of December 21, 2001 modified the adjudication entered on October 15, 2001. The Quartet Members contend that the entry of the December 21, 2001 order and all of the other post-trial orders were more than mere ministerial acts because they disposed of post-trial motions for relief, the disposition of which required deliberation and the exercise of judicial discretion.

Hence, the post-petition orders were entered in violation of the automatic stay of 11 U.S.C. § 362(a).[7] The Quartet Members request this court to enter an order nullifying and avoiding the December 21, 2001, January 8, 2002, and January 11, 2002 orders of the state court as violating the automatic stay.

Ehrlich contends that the December 21, 2001 Adjudication and Final Decree did not substantively address issues regarding the amount of and liability for the debt in question; thus, as pertaining to the monetary award, the entry of the December 21 order was purely a ministerial act. Additionally, Ehrlich moves for dismissal of the Chapter 13 petitions of Quartet Members, arguing that the Quartet Members are ineligible under 11 U.S.C. 109(e) since their debts exceeds the statutory ceiling imposed therein. Ehrlich argues that the sum awarded him by the state court is sufficiently liquidated to bar the Quartet Members from filing petitions under Chapter 13.

## ANALYSIS

▮ The first issue before the court is whether the judgment awarded in the decree nisi (an interlocutory decree) can serve as the basis for determining eligibility under 11 U.S.C. § 109(e). The operative question is whether the debt the Quartet Members owe to Ehrlich is liquidated and exceeds the statutory ceiling. Eligibility under § 109 is a threshold inquiry

6. Arguably, the automatic stay would have prohibited the Quartet Members from filing this motion for post-trial relief without leave of the bankruptcy court.

7. In pertinent part, the automatic stay discussed in 11 U.S.C. § 362(a) states the following:

a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Secu-

rities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of-(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

because the filing of a petition by an eligible debtor affords the debtor the rights and protections embodied in the Bankruptcy Code. The statutory provision defining who may be a debtor states:

> (e) Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $290,525 and noncontingent, liquidated, secured debts of less than $871,550 or an individual with regular income and such individual's spouse, except a stockbroker or a commodity broker, that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $290,525 and noncontingent, liquidated, secured debts of less than $871,550 may be a debtor under chapter 13 of this title.

11 U.S.C. § 109(e). The language of the Bankruptcy Code plainly limits the evaluation of the amount of the debt to that established as of the date the petition is filed. *See In re Slack,* 187 F.3d 1070, 1075 (9th Cir.1999) (citing 11 U.S.C. § 109(e)); *In re Robertson,* 84 B.R. 109 (Bankr. S.D.Ohio 1988) (holding debt must be proven to exceed statutory limit at the time of filing).

According to § 109(e), a debtor is ineligible to file under Chapter 13 if he or she has noncontingent, liquidated, unsecured debts in excess of $290,525.00.[8] The term "liquidated" is not defined in the Bankruptcy Code and the court is unable to find a reported Fourth Circuit case wherein the term is specifically analyzed. BLACK'S LAW DICTIONARY 930 (6th ed.1990) defines the term as "ascertained; determined; fixed; settled; made clear or manifest." A "liquidated debt" is defined as one that is "cer-

tain what is due and how much is due." *Id.*

Courts have endeavored to define the term and, consequently, there are numerous definitions provided in reported cases. One court recognized that the liquidation requirement of § 109(e) concerns the ascertainability of the amount of a debt. *In re McGovern,* 122 B.R. 712 (Bankr. N.D.Ind.1989). Another court analyzed whether "the claim is fixed, certain, or otherwise determined by a specific standard." *In re McGarry,* 230 B.R. 272, 275 (Bankr.W.D.Pa.1999). *See Barcal v. Laughlin (In re Barcal),* 213 B.R. 1008, 1014 (8th Cir. BAP 1997) (finding that liquidation is premised on the determination that the debt is fixed, certain, governed by a specific standard, or readily determinable). Liquidated has also been defined as "capable of ready determination." *In re Loya,* 123 B.R. 338, 340 (9th Cir. BAP 1991). In the Ninth Circuit, capable of ready determination "turns on the distinction between a simple hearing to determine the amount of a certain debt, and an extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish amounts or liability." *Slack v. Wilshire Ins. Co. (In re Slack),* 187 F.3d 1070, 1073–74 (9th Cir. 1999).[9]

The expansive definitions of debt and claim impact how this court should construe the term "liquidated." Debt is defined as "liability on a claim." 11 U.S.C. § 101(12). The meaning of claim therefore is essential in any discussion of the term "debt." *See Pennsylvania Department of Public Welfare v. Davenport,* 495 U.S. 552, 558, 110 S.Ct. 2126, 109 L.Ed.2d

---

8. The uncontingent and unsecured nature of the debts are not at issue here.

9. In *Slack,* the Ninth Circuit expressly declined to rule on whether a pre-petition tentative judgment entered by a state court was a sufficient basis upon which to find ineligibility under § 109(e). *Slack,* 187 F.3d at 1075.

588 (1990) (discussing essential relationship between the terms "debt" and "claim"). "Claim" is defined as follows:

    (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

    (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). Congress intended that the definition of claim in the Code be as broad as possible, noting that "the bill contemplates that all legal obligations of the debtor, no matter how remote or contingent, will be able to be dealt with in the bankruptcy. It permits the broadest possible relief in the bankruptcy court." *Grady v. A.H. Robins Co., Inc.,* 839 F.2d 198, 200 (4th Cir.1988) (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 309 (1977), S.Rep. No. 989, 95th Cong., 2d Sess. 21–22 (1978), reprinted in 1978 U.S.Code Cong. & Adm. News, 5787 at 5807–08 and 6266). *See, e.g., Ohio v. Kovacs,* 469 U.S. 274, 279, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985); *Robinson v. McGuigan,* 776 F.2d 30, 34 (2d Cir.1985); *Matter of M. Frenville Co., Inc.,* 744 F.2d 332, 336 (3d Cir.1984); *In re Edge,* 60 B.R. 690, 692–94 (Bankr. M.D.Tenn.1986); *In re Johns–Manville Corp.,* 57 B.R. 680, 686–88 (Bankr.S.D.N.Y. 1986).

■ The fact that "debt" is defined by use of the term "claim" evidences a congressional intent that the terms be coextensive. *Davenport,* 495 U.S. at 558, 110 S.Ct. 2126. *See In re Mazzeo,* 131 F.3d 295 (2d Cir.1997) (discussing coterminus relationship between debt and claim). As explained by the Seventh Circuit, the "creditor has a 'claim' against the debtor; the debtor owes a 'debt' to the creditor." *In re Knight,* 55 F.3d 231, 234 (7th Cir. 1995) (citation omitted). "In sum, by defining claim so broadly and by defining debt in terms of claim, Congress has adopted the broadest possible definition of debt." *In re Mazzeo,* 131 F.3d at 302 (quoting *Davenport,* 495 U.S. at 564, 110 S.Ct. 2126) (internal quotation marks omitted). This court, therefore, must attempt to define and apply the term "liquidated" as it modifies the broadly defined term "debt" (coextensively defined by "claim") in § 109(e).

■ The Quartet Members would have the court hold that Ehrlich's claims are not liquidated because there was no agreement among the parties liquidating an amount of damages with regard to employment and membership in the Quartet. They also contend that the judgment was not liquidated because the damages awarded were not fixed by operation of law. The court believes that the arguments regarding liquidation by agreement or by operation of law are hardly applicable to the facts here where a court has already entered a judgment after hearing testimony and reviewing evidence.

The Quartet Members also argue that the judgment is unliquidated because it based on a mere provisional order since the automatic stay precluded the entry of the state court's post-petition Final Adjudication and Decree. The Quartet Members make much of the fact that because the debt was subject to modification via post-trial motions it was unliquidated. Even assuming, without deciding, that the automatic stay nullified all post-petition state court orders, the court finds no merit in the Quartet Member's position on this issue.

■ It does not appear that the distinction between liquidated and unliquidated

debts turn on the finality of a judgment award, nor does it depend on the existence or the extent of a dispute. *See Slack*, 187 F.3d at 1075 (holding that a "debt is liquidated if the amount is readily ascertainable, notwithstanding the fact that the question of liability has not been finally decided"). Liquidation bears on the amount of liability not whether liability exists. *United States v. Verdunn*, 89 F.3d 799, 802 (11th Cir.1996).

■ According to the Bankruptcy Code, the terms "disputed" and "unliquidated" are separate and have different meanings. *See Vaughan v. Central Bank of the South (In re Vaughan)*, 36 B.R. 935, 938 (N.D.Ala.1984), *aff'd*, 741 F.2d 1383 (11th Cir.1984) (recognizing difference between disputed and unliquidated). A disputed debt is not necessarily unliquidated. The Quartet Members cannot escape the ceiling of § 109(e) due to the apparent lack of finality and the potential for modification.

It is clear that litigation in the state court has defined the amount of the debt; therefore, the debt appears to be liquidated under both the "readily determinable" and "readily ascertainable" standards.[10] Substantial hearings or review of evidence are not required to verify the amount of the instant debt. Only the slightest modicum of effort is required to determine the amount of the debt; indeed, the court need only survey the money judgment which was figured down to the penny. It is also sufficient under § 109(e) that the debt is based on a non-final adjudication (including the decree nisi). Nowhere in the Bankruptcy Code does it require that a debt be based on a final order to be determined liquidated. To the contrary, the Bankruptcy Code defines debt (co-extensively from claim) to encompass obligations well outside the realm of finality.

Furthermore, merely because the amount of the debt was potentially changeable by operation of post-trial motions does not make the debt unliquidated. The court does not believe that there is a principal distinction between a debt that can be modified by operation of post-trial motions or one that can be changed by appellate review. *See, e.g., In re Keenan*, 201 B.R. 263 (Bankr.S.D.Cal.1996) (recognizing that under California law a judgment is not final and is given no preclusive effect if an appeal is pending but still holding that the claim based on an appealed judgment is not unliquidated); *In re Aye*, 1992 WL 236160 (Bankr.M.D.Fla.1992) (holding that debt based on a state court judgment is liquidated even though judgments on appeal from Florida state courts are not final). If appellate review does not affect the liquidity of a claim, the potential for modification at the trial level should not affect liquidity either. In both instances the debt is not permanently carved in stone and is potentially modifiable.

The Quartet Members suggest that the state court could have completely vacated or otherwise substantially altered the decree nisi here; thus, the amount of the judgment as of the petition date was tenuous at best and should not be considered liquidated. Based on the court's reading of Pa. Cons.Stat. 1517 and Rule 227.1, it does not appear that the equity court here could have modified or changed its adjudication or decree nisi except upon the grounds specifically requested in the prop-

---

**10.** The judgment was computed based on twenty-five percent of Ehrlich's interest in the Quartet's funds on hand, twenty-five percent of the pension fund established by the Quartet, twenty-five percent of the value of the Quartet, a percentage of concert fees due to Ehrlich for Quartet performances, expenses due to Ehrlich as of February 21, 2000, and attorney's fees. *Ehrlich v. Audubon Quartet, Inc.*, GD 00–9438 (Ct.Com.Pl. Oct. 12, 2001) (decree nisi).

erly filed post-trial motions. The Quartet Members have not proffered any reported cases holding that a Pennsylvania court may modify a decree beyond that requested in a post-trial motion. The assertions by the Quartet Members at oral arguments that the state court could have vacated the entire award prior to the entry of the final judgment does not appear correct.

As stated in Rule 1517 of the Pennsylvania Consolidated Statutes, a court deciding an action in equity shall make an adjudication, which must consist of "(1) a statement of the issues; (2) a closely condensed chronological statement, in narrative form or in separate findings, of all the facts which are necessary to be known in order to determine the issues; (3) a discussion of the questions of law involved and the court's conclusions of law and (4) a decree nisi." The adjudication referred to in Rule 1517 is the chancellor's proposed final disposition of the complaint and reaches the very merits of the action. *U.S. Nat. Bank in Johnstown v. Johnson,* 487 A.2d 809, 506 Pa. 622 (1985).[11]

■ As indicated in Rule 1517, a decree nisi is a component of an adjudication. "A decree nisi is a non-appealable interlocutory order which gives the parties an opportunity to examine and object to the proposed disposition of the case before the court enters a final order." *Chalkey v. Roush,* 757 A.2d 972, 975 (Pa.Sup.Ct.2000). Similarly, BLACK's defines decree nisi as

"[a] provisional decree, which will be made absolute on motion unless cause be shown against it." BLACK's LAW DICTIONARY 411.

■ After the adjudication has been filed, parties may challenge the decree and the factual findings by filing post-trial motions. *Chalkey,* 757 A.2d at 975. Pursuant to Rule 227.1(c)(2) of the Pennsylvania Rules of Civil Procedure, post-trial motions must be filed within ten days of the entry of the adjudication. *Id.* "After the court addresses these motions, pursuant to Rule 227.4 it enters a final decree from which the parties may appeal." *Id.* Grounds not specified in a post-trial motion "are deemed waived." Rule 227.1(b)(2). "If the time for appeal is allowed to run, at the expiration thereof the decree becomes unchangeable as though it had been affirmed on appeal." *Ladner v. Siegel,* 148 A. 699, 701, 298 Pa. 487, 494 (1930).

■ Overall the purpose of the rule affording litigants an opportunity to file post-trial motions is simply "to provide the trial court the first opportunity to review and reconsider its earlier rulings and correct its own error." *Soderberg v. Weisel,* 687 A.2d 839, 845, 455 Pa.Super. 158, 168 (1997) (citations omitted). Moreover, post-trial motions under Rule 227.1, "ha[ve] the effect of supplementing the record on appeal." *In re J.J.F.,* 729 A.2d 79, 82 (1999).

■ Rule 227.1 gives the court discretion to grant post-trial relief (e.g., modify or change a decision or decree nisi) if a party timely files a post-trial motion.[12]

---

11. Indeed, the Quartet Members do not dispute the nature of an adjudication. *See* Defendants Shaw's, Lederer's and Takayama's Response to Plaintiff's Motion for Post–Trial Relief at 4, *Ehrlich v. Audubon Quartet, Inc.,* GD 00–9438 (Ct.Com.Pl.2001) (arguing that the injunction should be dissolved because "the Court has reached the merits of the plaintiff's claim"). ·

12. In pertinent part, Rule 227.1 states thusly: "After trial and upon the written Motion for Post–Trial Relief filed by any party, the court

may ...(4) affirm, modify or change the decision of decree nisi, or (5) enter any other appropriate order." The court notes that, if interpreted broadly, subsection (5) could arguably be relied on to support the Quartet Members' argument that the state court could have vacated the entire decree nisi. The Quartet Members, however, have not provided any authority that subsection (5) could be interpreted to this end. Instead, the court is inclined to believe that subsection (5) is limited in its scope to those grounds for relief

However, Rule 227.1(b) specifically states that "post-trial relief may not be granted unless the grounds therefor... are specified in the [post-trial] motion." In other words, according to the plain reading of the rule it does not appear that an equity court can ordinarily change a decree nisi except as specifically requested in a timely filed motion.[13]

Assuming, for the sake of argument, that the court could have modified the money judgment as requested in the post-trial motions, it still does not appear that the state court could have or would have properly modified the award to a sum below the § 109(e) cap. On October 12, 2001, the state court awarded Ehrlich $611,119.24. As of the petition date two post-trial motions and one response were properly before the court. The only post-trial motion that pertained to the amount of money awarded was Ehrlich's request for *more* attorney's fees and his request that the Quartet Members be liable for any *future* custodian fees, costs, and expenses (emphasis added). In their response, the Quartet Members objected to Ehrlich's request for more attorney's fees by incorporating their prior objections to the award of any attorney's fees, costs, and expenses to Ehrlich. The Quartet Members also argued against the imposition of future liability for custodian fees and argued that Ehrlich should pay his share of the custodian fees.

Apart from their response to Ehrlich's post-trial motion, the only grounds for post-trial relief timely moved for by the Quartet Members pertained to the admission of certain exhibits into evidence, a ruling on the ownership of a power point program, and a dissolution of the preliminary injunction. The post-trial motion filed by the Quartet Members on November 30, 2001, which addressed the monetary award, was summarily dismissed by the state court as untimely filed on December 5, 2001 and December 6, 2001. Even if the state court eliminated from the judgment the entire award of Ehrlich's attorney's fees ($132,844.00) and required Ehrlich to pay his share of custodian fees, costs, and expenses (approximately one-fourth of $12,000), the remaining judgment jointly and severally owed by the Quartet Members would still exceed the eligibility cap.

■ In any event, the true essence of the Quartet Members' argument is best described as a contention that the because judgment was disputed and potentially subject to modification it was not liquidated. As discussed above, however, a debt is liquidated for purposes of § 109(e) notwithstanding the presence of a dispute and the potential for modification upon judicial review.

■ Lastly, Quartet Members argue that the court should determine eligibility

specifically requested in a duly filed post-trial motion. *See infra* p. 781 and note 13.

**13.** The court was unable to locate a decision of the Pennsylvania Supreme Court addressing this precise issue and the Quartet Members did not provide any authority to the contrary. The court recognizes that equity may allow a court to make changes according to the demands of substantial justice or to rectify clerical errors without the need for post-trial motions. However, the principle announced in the text above seems to agree

with the general rules governing decrees in equity. For example, in *Cortina v. Cortina*, 98 So.2d 334 (Sup.Ct.Fla.1957), the court stated: "There can be no doubt that a Chancellor cannot modify a support decree, or any other decree, unless the issue of modification is presented to him in appropriate proceedings and each party is given an opportunity to be heard on such issue." Although the Florida court specifically discussed support decrees, it recognized that modifications to "any decree" can only be made pursuant to appropriate proceedings.

based on a debtor's schedules. The court is unwilling to be bound by the estimated amount of Ehrlich's claims set forth in the respective schedules of the Quartet Members. To do so would allow these putative debtors to bootstrap themselves into Chapter 13 by self-serving estimations that ignore the realities of their respective financial obligations.

The Quartet Members also argue that the post-petition proceedings in the state court should be determined null and void. Specifically, the Quartet Members request the court to avoid the orders of December 21, 2001, January 8, 2002, and January 11, 2002. The court also notes that the Quartet Members filed a supplemental post-trial motion in apparent violation of the automatic stay which would likewise be subject to nullification. Since the court finds that the Quartet Members are ineligible to file Chapter 13 petitions, it does not need to address the application of the automatic stay to the post-petition state court orders. The issues regarding the post-petition orders are moot based on the court's finding above that the Quartet Members are ineligible under § 109(e).

## CONCLUSION

In order to be eligible to file a Chapter 13 petition, a debtor must have less than $290,520.00 of noncontingent, liquidated, unsecured debts on the date of the petition. The $611,119.24 judgment awarded by the state court in the Adjudication of October 15, 2001 is sufficiently liquidated to make Chapter 13 unavailable to the Quartet Members. Upon the facts of this case, the court holds that the interlocutory nature of the aforementioned adjudication does not alter its character as a liquidated debt. Finality of a debt is not required by the Bankruptcy Code. Nor is the court inclined to hold that the debt is unliquidated merely because post-trial motions were before the court. The post-trial motions here are simply the result of a statutory provision whereby litigants can request the court to review and correct its decisions. Furthermore, the court finds that the post-trial motions properly before the state court would not have significantly altered the amount of the money judgment in the decree nisi even if the state court found in favor of the Quartet Members. Since the court finds that the Quartet Members are ineligible for Chapter 13, the motions to declare state court orders null and void are dismissed as moot.

Accordingly, it is

## ORDERED:

That the Quartet Members are ineligible for relief under 11 U.S.C. § 109(e) and the Motion to Dismiss Chapter 13 Petitions of Debtors will be GRANTED by entry of the court's form order of dismissal following this Decision and Order, and it is

## FURTHER ORDERED:

That upon entry of the form order of dismissal, the Motion for Entry of Order Determining that Pennsylvania State Court Order is Null and Void will simultaneously be DISMISSED as moot without the necessity of further hearings or orders.

Copies of this order are directed to be sent to Howard J. Beck, Jr., Esq. and Lori D. Thompson, Esq., Gentry, Locke, Rakes, and Moore, Counsel for Shaw, Lederer, and Wiencko, P.O. Box 40013, Roanoke, Virginia 24022–0013; Richard C. Maxwell, Esq., Woods, Rogers & Hazlegrove, P.L.C., Counsel for David Ehrlich, P.O. Box 14125, Roanoke, Virginia 24038–4125; and to Rebecca Connelly, Trustee, P.O. Box 1001, Roanoke, Virginia 24005.