In re Preston Neil NICHOLES, Debtor.

Preston Neil NICHOLES, Appellant,

v.

JOHNNY APPLESEED OF WASHING-
TON; John H. Krommenhoek, Chapter
13 Trustee, Appellees.

BAP No. ID–94–1188–RuMeJ.
Bankruptcy No. 93–02824.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted June 22, 1994.

Decided June 23, 1995.

83

Marc S. Tanner, Boise, ID, for Preston Neil Nicholes.

Timothy J. Carlson, Yakima, WA, for Johnny Appleseed.

Before RUSSELL[1], MEYERS and JONES, Bankruptcy Judges.

## OPINION

RUSSELL, Bankruptcy Judge:

A Chapter 13 debtor appeals the bankruptcy court's summary order denying confirmation of his Chapter 13 plan.

---

1. Honorable David E. Russell, Chief Bankruptcy Judge for the Eastern District of California, sitting by designation.

2. In his appellate brief, debtor states that the debt for trucking should have also been listed as a contingent debt. He also states that, since the confirmation hearing, he has amended his schedule F to show that he has seven noncontingent, general, unsecured claims in the approximate

## I. FACTS

The debtor, Preston Neil Nicholes, is the president, director, and sole shareholder of Boss Fruit & Vegetable, Inc. ("Boss Fruit"). Boss Fruit is an Idaho corporation and a licensee under the Perishable Agricultural Commodities Act ("PACA") codified at 7 U.S.C. §§ 499a et seq.

On September 28, 1993, the debtor filed his petition for Chapter 13 relief, listing himself in the caption as "dba Boss Fruit & Vegetable, Inc." His schedule of unsecured nonpriority claims consisted of 13 pages of debts which totalled $4,103,290.80. All of the claims, with the exception of the first one listed for trucking in the amount of $8,400.10, were listed as contingent debts.[2] Other than the trucking claim, seven (7) claims which totalled $81,506.50 denominated as being for "freight," and a claim for legal fees in the amount of $26.40, the debtor did not list the consideration for any of the claims. The debtor contended that the debts were contingent because they were incurred by Boss Fruit and were not owed by the debtor.

The debtor's plan provided that he would pay $143 per month to the Chapter 13 trustee for 36 months. In the first year of the plan, $135.32 of the $143 payment would be paid on administrative (primarily debtor's attorney's fees) and priority claims. The debtor's plan proposed to pay holders of secured claims directly.

Appellee, Metropolitan Life Insurance Company dba Johnny Appleseed of Washington ("Johnny Appleseed"), timely filed a proof of claim in the debtor's case in the amount of $475,667.27. Johnny Appleseed also objected to confirmation of debtor's plan on three grounds: 1) the debtor was ineligible for Chapter 13 relief because his noncontingent, liquidated unsecured debts exceeded the $100,000 limit for Chapter 13 relief[3] then

amount of $34,000 plus a disputed claim with West One Bank.

3. At the confirmation hearing, Johnny Appleseed argued that debtor was personally liable under PACA as the sole shareholder and as an officer and director of Boss Fruit for the perishable agricultural commodities sold to Boss Fruit by Johnny Appleseed.

set forth in 11 U.S.C. § 109(e)[4]; 2) the plan was not filed in good faith; and, 3) the plan was not feasible.

The bankruptcy court held a hearing on confirmation of the plan at which counsel for the debtor and Johnny Appleseed argued their respective positions. No testimony was taken during the hearing.

Thereafter the bankruptcy court entered a summary order denying confirmation of the debtor's plan. The court found that the listing of every debt as contingent was not credible and that claims for freight already incurred were not contingent because they were not obligations dependent upon the occurrence of a future event. The court then found that the remaining unsecured debts fell into the same noncontingent category. The debtor filed a timely notice of appeal.

## II. ISSUES PRESENTED

1. Is the order denying confirmation of a Chapter 13 plan appealable?

2. Did the bankruptcy court err in denying confirmation of the debtor's plan on the grounds that the debtor was ineligible to be a Chapter 13 debtor under 11 U.S.C. § 109(e)? To reach this issue, the court must consider the effect of disputes on the distinction between contingent and noncontingent debts and liquidated and unliquidated debts in the context of Chapter 13 eligibility determinations.

## III. STANDARDS OF REVIEW

■■■■ The question of whether a debt is contingent or liquidated is an issue involving interpretation of the Bankruptcy Code and, thus, is a question of law subject to *de novo* review. *See In re Goralnick,* 81 B.R. 570, 571 (9th Cir. BAP 1987). However, the "contingent" or "liquidated" amount of a debt is a question of fact which cannot be reversed unless clearly erroneous. *See* Fed. R.Bankr.P. 8013.

**4.** Hereafter, unless otherwise stated, all statutory references are to 11 U.S.C. §§ 101 et seq., prior

## IV. DISCUSSION

### A. *Leave to Appeal Summary Order is Granted*

■■ A preliminary issue is whether the summary order of the bankruptcy court denying confirmation of the debtor's Chapter 13 plan is a final order for purposes of appeal. Jurisdiction over an appeal from a bankruptcy court order is governed by 28 U.S.C. § 158. Section 158 authorizes district courts and bankruptcy appellate panels to hear appeals from final judgments, orders and decrees. 28 U.S.C. § 158(a), (b). This is often referred to as the "final judgment rule." Ordinarily, interlocutory orders are not appealable without leave of court. 28 U.S.C. § 158(a)(3). Courts have held that orders denying plan confirmation are interlocutory when the petition itself has not been dismissed. *In re Simons,* 908 F.2d 643 (10th Cir.1990); *Maiorino v. Branford Savings Bank,* 691 F.2d 89 (2d Cir.1982).

In the present case, the bankruptcy court denied confirmation of the debtor's plan after it found that the debtor was ineligible for Chapter 13 relief. The crux of the court's order was the ineligibility determination. While it is true that the debtor then could have converted his case to chapter 7 or even perhaps to chapter 11, it is clear from the pursuit of this appeal that the debtor desires to deal with his creditors in the context of a Chapter 13 plan. *See In re Wenberg,* 94 B.R. 631, 636 (9th Cir. BAP 1988), *aff'd,* 902 F.2d 768 (9th Cir.1990) (holding that 11 U.S.C. § 109(e) is not jurisdictional and debtors should be given the opportunity to convert their case). Without an appellate determination as to the debtor's eligibility to file such a plan, the debtor would have no alternative but to convert or dismiss.

■■■■ Although appellant did not file a motion for leave to appeal, we may treat the notice of appeal as a motion for leave to file an interlocutory appeal, if the standards set forth in 28 U.S.C. S 1292(b) are met. Fed. R.Bankr.P. 8003(c); *In re Sperna,* 173 B.R. 654, 658 (9th Cir. BAP 1994). It is appropri-

to the October 22, 1994, amendments.

ate to grant leave if the order on appeal involves a controlling question of law as to which there is a substantial basis for difference of opinion and an immediate appeal may materially advance the ultimate termination of the litigation. *In re Sperna, supra,* at 658. Here, the issue of which claims disqualify a debtor from Chapter 13 relief is a controlling question of law, and the definitions of some types of qualifying and disqualifying claims is still unsettled. Moreover, an immediate determination of appellant's qualification for Chapter 13 relief is necessary before the case can proceed to a conclusion.

We therefore grant leave to appeal the denial of confirmation.

## B. *Eligibility for Chapter 13 Treatment*

### 1. *Need for Expeditious Determination of Eligibility*

■ Under Chapter 13, a debtor must complete plan payments within 36 months or, with leave of court, not later than 60 months. 11 U.S.C. § 1322(c). This time period begins running from the date at which the Chapter 13 debtor is first obligated to begin making payments to the trustee under the unconfirmed plan—i.e. within 45 days after the petition is filed [5]—as opposed to the date at which the first payment becomes due under the confirmed plan. *In re Duckett,* 139 B.R. 6 (Bankr.E.D.Tex.1992); *see also In re Woodall,* 81 B.R. 17 (Bankr.E.D.Ark.1987). The Bankruptcy Act, superseded by the Bankruptcy Code in 1978, did not provide a limitations period on repayment; thus, the establishment of a 36–month/60–month repayment period in the Bankruptcy Code evidences Congressional intent to ensure expeditious administration of Chapter 13 cases. *See House Report* No. 95–595, 95th Cong., 1st Sess. 429 (1977). This objective guides our reasoning today.

■ When a party challenges a debtor's eligibility for Chapter 13 relief, the bankruptcy court needs to make a prompt and effective determination of a debtor's eligibility.

Failure to promptly and effectively determine the debtor's eligibility results in a waste of judicial resources and inefficient administration of a case—contravening the legislative intent for expedient resolution of Chapter 13 cases.

■ When considering whether or not to confirm a Chapter 13 plan, a bankruptcy court must find that the plan complies with the provisions of Chapter 13 and with other applicable provisions of the Bankruptcy Code. 11 U.S.C. § 1325(a)(1). Thus, in the present case, the bankruptcy court properly considered the issue of the debtor's eligibility for Chapter 13 when raised by appellees at the plan confirmation stage.

### 2. *Eligibility Requirements*

■ Section 109(e) of the Bankruptcy Code sets forth the eligibility requirements for Chapter 13 relief. It provides in pertinent part:

> Only an individual with regular income that owes, on the date of the filing of the petition, **noncontingent, liquidated,** unsecured debts of less than $100,000 and **noncontingent, liquidated,** secured debts of less than $350,000 ... may be a debtor under Chapter 13 of this title.

§ 109(e) (emphasis added). The Code defines a "debt" as a liability on a claim. § 101(12). A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

§ 101(5)(A). The terms "debt" and "claim" are coextensive. *In re Quintana,* 107 B.R. 234, 237–38 (9th Cir. BAP 1989), *aff'd,* 915 F.2d 513 (9th Cir.1990).

■ When filing a petition for bankruptcy, a debtor must file a list of creditors and a schedule of assets and liabilities. § 521(1). A debtor must include in the schedule of liabilities **all claims** that fall within the defi-

---

**5.** A chapter 13 debtor must file a proposed debt repayment plan within 15 days after filing the petition. 11 U.S.C. § 1321; Fed.R.Bankr.P. 3015. The debtor must commence payments to the trustee under the proposed plan—whether confirmed or not—within 30 days after the plan is filed. 11 U.S.C. § 1326(a)(1). However, the trustee does not begin distributing such payments until the plan is confirmed. 11 U.S.C. § 1326(a)(2).

nition of § 101(5). 3 *Collier on Bankruptcy* ¶ 521.06[2] (15th ed., Lawrence King, et al., eds., 1994). Although § 101(5) expressly **includes** debts which are contingent, unliquidated or disputed **in the definition of a claim**, § 109(e) **excludes** unliquidated or contingent debts from the Chapter 13 **eligibility computation**, but does not exclude debts which are merely **disputed.** *See also In re Hutchens,* 69 B.R. 806, 811 (Bankr. E.D.Tenn.1987).

### 3. *Problems of Debt Characterization*

Unfortunately, the Bankruptcy Code fails to define the terms contingent, unliquidated, and disputed. Moreover, the courts have rendered confusing and sometimes overlapping interpretations of these terms—particularly where, as here, the debtor questions liability for a debt. Nevertheless, it is settled in this Circuit that the terms disputed, contingent, and liquidated have different meanings. *In re Sylvester,* 19 B.R. 671, 672–73 (9th Cir. BAP 1982).

### a. *Distinguishing Contingent Debts*

 It is also settled that a debt is noncontingent if all events giving rise to liability occurred prior to the filing of the bankruptcy petition. *In re Fostvedt,* 823 F.2d 305, 306 (9th Cir.1987). As the Ninth Circuit Court of Appeals held:

[T]he rule is clear that a contingent debt is "one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor."

*Id.* (quoting *Brockenbrough v. Commissioner,* 61 B.R. 685, 686 (W.D.Va.1986)). Thus, debts of a contractual nature—i.e. claims for

goods or services—are not contingent. *In re Albano,* 55 B.R. 363, 366–67 (N.D.Ill.1985) (liability on contract is "noncontingent" once contract is made, even if liability is subject to being avoided by some later occurrence). Furthermore, the fact that a claim has not been reduced to judgment does not render it contingent. *See In re Dill,* 30 B.R. 546, 549 (9th Cir. BAP 1983), *aff'd,* 731 F.2d 629 (9th Cir.1984).

 In the instant matter, the bankruptcy court correctly held that the debts for freight were noncontingent because "[c]laims for freight already incurred ordinarily are not obligations dependent on the occurrence of a future event." However, the court did not analyze the nature of the remaining debts. Instead, perhaps out of frustration, the court stated that "[a]bsent any showing to the contrary, and given the debtor's lack of credibility in this regard, it is assumed the remainder of the unsecured debts fall into the [noncontingent] category."

The issue of whether or not a debt is contingent is a question of law and, thus, subject to *de novo* review. None of the debts listed on debtor's schedules as "contingent" rely on some future extrinsic event to trigger liability. Rather, all events giving rise to liability for these debts arose when Boss Fruit received the agricultural goods and trucking services. Furthermore, debtor's potential personal liability stems from Boss Fruit's failure to pay for the PACA obligations.[6] All of these events occurred prior to the debtor's bankruptcy filing.

At the confirmation hearing, counsel for the debtor argued that the debts of Boss Fruit were listed on the debtor's schedules out of an abundance of caution "in the event that some of [the creditors] claimed that [the

---

**6.** The Perishable Agricultural Commodities Act (PACA) provides in relevant part:

Perishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, shall be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been

received by such unpaid suppliers, sellers, or agents.

7 U.S.C. § 499e(c)(2).

Courts have held that under PACA, an individual who is in a position of control of a corporation may be personally liable to the beneficiaries for amounts due to unpaid suppliers. *Mid–Valley Produce Corp. v. 4–XXX Produce Corp.,* 819 F.Supp. 209, 212 (E.D.N.Y.1993); *see also In re Baird,* 114 B.R. 198, 204 (9th Cir. BAP 1990) (an officer who causes a corporate trustee to commit a breach of trust which causes a loss to the trust is personally liable to the beneficiaries for that loss).

debtor] had some possible liability." Apparently, the debtor believes that because he disputes his personal liability for the debts of the corporation, those debts are contingent as to him until liability is imposed on him, if at all, by judicial decree.

Whatever the debtor believes, even a bona fide dispute over liability for a claim does not make the debt contingent. *Dill,* 30 B.R. at 549.[7] This rule has been extended to disputes involving debts of a corporation. Debts of a corporation listed on an individual debtor's schedules are not rendered contingent simply because the individual debtor's liability for the corporation's debts is at issue. *See In re Claypool,* 142 B.R. 753, 754–55 (Bankr.E.D.Va.1990). Thus, in the instant matter, it makes no difference that the debts are those of the corporation; debtor's dispute over liability for Boss Fruit's debts does not render such debts "contingent." Since the acts which may give rise to the debtor's personal liability for the corporation's debts occurred prior to the filing of the petition, no future event need occur to impose liability. The debts are therefore not contingent.

### b. *Disputes and Unliquidated or Liquidated Debt*

On appeal, the debtor appears to argue that besides being contingent, most of the $4,103,209.80 in listed debts are also "unliquidated," again because they are obligations of Boss Fruit and not those of the individual debtor. The debtor previously raised this argument at the hearing on plan confirmation but the court below made no ruling on the issue of whether debtor's dispute over liability rendered the debt "unliquidated."

A debt is liquidated if it is capable of "ready determination and precision in computation of the amount due." *Fostvedt,* 823 F.2d at 306 (citing *Sylvester,* 19 B.R. at 673). The test for "ready determination" is whether the amount due is fixed or certain or otherwise ascertainable by reference to an agreement or by a simple computation. *Sylvester,* 19 B.R. at 673 (citing *In re Bay Point*

*Corp.,* 1 B.C.D. 1635 (D.N.J.1975)); *In re Kaufman,* 93 B.R. 319, 322 (Bankr.S.D.N.Y. 1988); *In re Pulliam,* 90 B.R. 241, 244 (Bankr.N.D.Tex.1988). Thus, debts arising from a contract are generally liquidated. *Sylvester,* 19 B.R. at 673. On the other hand, debts based on unlitigated tort and quantum meruit claims are generally unliquidated because damages are not based on a fixed sum. *See Sylvester,* 19 B.R. at 673; *see also Matter of Belt,* 106 B.R. 553, 558 (Bankr. N.D.Ind.1989).

It is the term "disputed" that creates the most confusion in characterizing debts as liquidated or unliquidated. Debts which are merely disputed are presumably included in the § 109(e) limitation calculation. *See, e.g., In re Hutchens, supra; In re Williams,* 51 B.R. 249, 251 (Bankr.S.D.Ind. 1984); *In re DeBrunner,* 22 B.R. 36, 37 (Bankr.D.Neb.1982). However, the term "disputed" is broad and can encompass either liquidated or unliquidated debts. It can also involve the liability for a claim, the amount of a claim, or both. Although courts agree that a claim is liquidated if the amount is readily determinable, courts are divided over whether a debt is unliquidated when there is a dispute as to liability or amount. *See In re Teague,* 101 B.R. 57, 59 (Bankr.W.D.Ark. 1989); *Matter of Pearson,* 773 F.2d 751, 754 (5th Cir.1985). The issue boils down to whether a dispute over liability or amount precludes the ready determination of a debt.

At least three views have been expressed. The first and most expansive view holds that a dispute as to liability or amount renders a debt unliquidated. *In re Lambert,* 43 B.R. 913 (Bankr.D.Utah 1984) (liquidated debt is certain as to amount and liability but debt cannot be certain to extent there is a bona fide dispute as to amount or underlying liability); *In re King,* 9 B.R. 376 (Bankr.D.Or. 1981) (debt is not liquidated if there is substantial dispute regarding liability or amount). This view appears to equate "disputed" debt with "unliquidated" debt. *See In re Vaughan,* 36 B.R. 935, 938 (N.D.Ala. 1984), *aff'd,* 741 F.2d 1383 (11th Cir.1984).

---

7. A tort claim ordinarily is not contingent as to liability; the events that gave rise to liability to the tort claim usually have occurred and liability is not dependent on some future event that may never happen. It is immaterial that the tort

claim is not adjudicated or liquidated, or that the claim is disputed, or indeed that it has any of the many other characteristics of claims under the Code. *In re Dill,* 30 B.R. 546, 549 (9th Cir. BAP 1983), *aff'd,* 731 F.2d 629 (9th Cir.1984).

The second view, a more rigid approach to Chapter 13 eligibility, holds that a dispute over liability or amount does not render a debt unliquidated. *In re Jerome*, 112 B.R. 563, 566 (Bankr.S.D.N.Y.1990). This view suggests that a dispute **never** affects the liquidated amount of a claim. The third view strikes a balance between the aforementioned approaches. This view, enunciated in *In re Wenberg, supra*, at 634–35, holds that a dispute **may** render a debt unliquidated if it prevents the ready determination of a claim. *Accord In re Lamar*, 111 B.R. 327, 328 (D.Nev.1990) (court considered reasons why claim was not readily ascertainable, but acknowledged that fact of dispute itself would not render debt unliquidated).

In concluding that a dispute could render a debt unliquidated, the Ninth Circuit Bankruptcy Appellate Panel relied on its decision in *Sylvester. See Wenberg*, 94 B.R. at 633–34. In *Sylvester*, the Panel held that disputed debts are nonetheless liquidated if the amount due is readily determinable [8] or "capable of ascertainment by reference to an agreement or by simple computation." 19 B.R. at 673. In reaching its conclusion, *Sylvester* also expressly rejected the liberal view of *In re King, supra*, which held that "a debt is not liquidated if there is a substantial dispute regarding liability or amount." *Id.* at 673–74. The Panel reasoned that *King's* definition of unliquidated debt "has the effect of excluding **disputed** claims from the section 109(e) computation, contrary to the express language of the section." *Id.* at 674 (emphasis added). Although *Sylvester* stated that "disputed unsecured debt is not excluded" when calculating eligibility under § 109(e), the *Sylvester* panel still appeared to recognize that a dispute **may** preclude the ready determination of a debt, effectively rendering the debt unliquidated. *Id.* at 673.

The theory on which claims have been held insufficient is that they were open, **unliquidated** claims (e.g., tort or quantum meruit claims requiring **proof as to liability,** reasonable value, damages, etc.) **which** by their very nature **are not fixed until juridical award** to fix liability and amount.

*Id.* (citations omitted) (emphasis added). This language implicitly rejects the more rigid view that a dispute **never** renders a debt unliquidated.

The Ninth Circuit Bankruptcy Appellate Panel expanded *Sylvester*'s definition of "ready determination" and analyzed the interplay between "disputed" debts and "unliquidated" debts in *Wenberg*. The Panel in *Wenberg* held that

[t]he definition of "ready determination" turns on the distinction between a simple hearing to determine the amount of a certain debt, and an extensive and contested evidentiary hearing in which substantial evidence may be necessary to establish amounts or liability. On this issue, the bankruptcy judge has the best occasion to determine whether a claim will require an overly extensive hearing or whether the claim is subject to a bona fide dispute; therefore not subject to "ready determination."

94 B.R. at 634–35. In other words, it is the **nature** of the dispute, and not the existence of the dispute, that makes a claim unliquidated. Like tort claims and other claims requiring juridical awards before liability and amount are established, some disputed claims cannot be readily determined because they require additional processing by the court.

More recently, the Panel followed *Sylvester* and *Wenberg* when it found that since only the briefest of hearings would be necessary, the claims were readily determinable and, thus, liquidated. *In re Loya*, 123 B.R. 338, 340–41 (9th Cir. BAP 1991). As the Panel in *Loya* stated:

[W]hether a debt is liquidated or not for purposes of 11 U.S.C. § 109(e) does not depend strictly on whether the claim sounds in tort or in contract, but whether it is capable of ready computation. For the same reason, whether a debt is liquidated does not depend on whether it is disputed.

*Id.* at 340.

Construing *Sylvester* with *Wenberg* and *Loya*, we hold that the fact that a

---

**8.** The *Sylvester* panel found that the debts were readily determinable in three ways: from the debtor's underlying contract with the creditor coupled with the debtor's knowledge of the orders placed; from the creditor's invoices; and from the cumulative monthly billings which the lower court found to constitute an account stated. *Sylvester*, 19 B.R. at 673.

claim is disputed does not per se exclude the claim from the eligibility calculation under § 109(e), since a disputed claim is not necessarily unliquidated. So long as a debt is subject to ready determination and precision in computation of the amount due, then it is considered liquidated and included for eligibility purposes under § 109(e), regardless of any dispute. On the other hand, if the dispute itself makes the claim difficult to ascertain or prevents the ready determination of the amount due, the debt is unliquidated and excluded from the § 109(e) computation.

 Under this test, even though disputed, debts of a contractual nature are generally liquidated. *Sylvester*, 19 B.R. at 673; *see also In re Pennypacker*, 115 B.R. 504, 507 (Bankr.E.D.Pa.1990); *Vaughan*, 36 B.R. at 938. Likewise, a debtor's dispute over liability for a corporation's debts, which have been specifically listed on the debtor's schedules, does not in itself render such debts "unliquidated." *Claypool*, 142 B.R. at 754–55.

 It is important to emphasize today that the bottom line is that § 109(e) calculations depend on "ready determination," not upon the existence or absence of disputes. If a debt is not readily determinable, whether as a result of a dispute or otherwise, then the claim is unliquidated. This approach encourages administrative efficiency, recognizes that Congress deliberately limited the availability of Chapter 13, and helps prevent potential abuse of the "super-discharge" provisions of Chapter 13.

 In any event, the bankruptcy court must determine whether the debts in question are subject to ready determination and whether computation of the amount due is a simple matter. If the court determines that such debts are readily determinable, then they are liquidated and included in the debtor's eligibility tally. If they are not readily determinable, then they are unliquidated and excluded from the eligibility tally. Since such determinations depend on an analysis of the facts, the Panel will remand this case to the bankruptcy court for the necessary factu-

al determinations pursuant to Fed. R.Bankr.P. 8013. *See also Wenberg*, 94 B.R. at 634–35.

### 4. *Good Faith and Feasibility*

The bankruptcy court made no ruling upon Johnny Appleseed's argument that the plan was not filed in good faith and that it was not feasible. Upon remand, those issues would need to be determined only if the court concludes that the debtor is eligible to be a debtor under Chapter 13.

### V. CONCLUSION

We REMAND this case to the bankruptcy court to complete the determination of the debtor's eligibility for Chapter 13. As part of this process, the court should ascertain whether Johnny Appleseed's claim or any of the other obligations of Boss Fruit listed on the debtor's schedules are capable of "ready determination" as the personal obligations of the debtor, and thus liquidated debts eligible for inclusion in the § 109(e) limitation calculation. Finally, if necessary, the court should examine the good faith and feasibility issues raised by Johnny Appleseed.

REMANDED WITH INSTRUCTIONS.