NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No.   WW-11-1378-KiJuH |
| | ) | |
| MICAH SCHNALL, | ) | Bk. No.   11-11420-MLB |
| | ) | |
| Debtor. | ) | |
| | ) | |
| MICAH SCHNALL, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **M E M O R A N D U M**[1] |
| | ) | |
| K. MICHAEL FITZGERALD, | ) | |
| Chapter 13 Trustee, | ) | |
| | ) | |
| Appellee. | ) | |

Argued and Submitted on March 23, 2012
at Seattle, Washington

Filed - May 24, 2012

Appeal from the United States Bankruptcy Court
for the Western District of Washington

Honorable Marc L. Barreca, Bankruptcy Judge, Presiding

Appearances:     Appellant Micha Schnall argued pro se;
Jason Wilson-Aguilar of the Office of K. Michael
Fitzgerald, Chapter 13 Trustee, argued for
appellee, K. Michael Fitzgerald, Chapter 13
Trustee.

Before: KIRSCHER, JURY, and HOLLOWELL, Bankruptcy Judges.

_____

[1] This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may have
(see Fed. R. App. P. 32.1), it has no precedential value. See 9th
Cir. BAP Rule 8013-1.

Appellant, chapter 13[2] debtor Micah Schnall ("Schnall"), appeals the bankruptcy court orders (1) denying confirmation of his plan and dismissing his case and (2) denying his motion for reconsideration.  We AFFIRM.[3]

## I. FACTUAL AND PROCEDURAL BACKGROUND

Schnall filed a skeletal chapter 13 bankruptcy petition on February 10, 2011.  All other required documents, including schedules and a proposed plan, were due by February 24, 2011.  The claims bar date was set for July 11, 2011.

Schnall, appearing pro se, filed his schedules, Form B22C, and a proposed chapter 13 plan on March 3, 2011.  In his Schedule A, Schnall claimed a fee interest in real property located in Redmond, Washington, valued at $440,000 and subject to $0 in secured claims.  The property is Schnall's primary residence.  Schnall did not claim a homestead exemption for the residence in his Schedule C.  His Schedule D was left blank. Schnall's Schedule F listed a mortgage held by BAC Home Loans Servicing LP ("BAC") with an unsecured claim of $133,000 and a mortgage held by One West Bank ("One West") with an unsecured claim of $527,000. Schnall listed both mortgage debts as

---

[2] Unless specified otherwise, all chapter and code references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.  The Federal Rules of Civil Procedure are referred to as "FRCP."

[3] The order dismissing Schnall's case was effective immediately because he was unable to obtain a stay of the order from both the bankruptcy court (denied 9/27/11) and the BAP (denied 11/23/11), and the automatic stay terminated by operation of law under § 362(c).

-2-

"disputed."[4]  In his Schedule J, Schnall listed no amount for rent/home mortgage or real estate taxes.  His monthly net income (Schedule I minus Schedule J) was listed as $1,930.  Schnall's Form B22C reflected a monthly disposable income of 369.88, or $22,192.80 over the 60-month plan.

Schnall's chapter 13 plan provided for payments of $1,015.44 every two weeks for 60 months, or $2,200.12 per month, or approximately $132,000 over the term of the plan.  The liquidation value was listed as $11,692.24.  The plan did not provide for any payments on Schnall's mortgages or for the prepetition arrears.

On March 24, 2011, BAC filed a proof of secured claim regarding the residence for $132,495.91, including a prepetition arrearage of $19,474.80 for payments not made between July 2009 and February 2011.  Attached to the claim was a note in the amount of $115,000 and a deed of trust, both dated October 30, 2006, both signed by Schnall, and both executed in favor of Quicken Loans Inc.

On April 26, 2011, appellee, chapter 13 trustee K. Michael Fitzgerald ("Trustee"), filed an objection to confirmation and motion to dismiss.  Trustee contended that Schnall's plan was not feasible because it failed to provide for treatment of secured claims of his two mortgage lien creditors and it failed to set forth any arrearage amounts or propose a cure for the arrears.  Trustee also contended that section IV.E.2.b. of Schnall's plan

---

[4] Presuming these debts were unsecured, Schnall would be ineligible for chapter 13 due to exceeding the unsecured debt limit of $360,475.  Even "disputed" debts are included in the § 109(e) jurisdictional calculation.  Nicholes v. Johnny Appleseed (In re Nicholes), 184 B.R. 82, 89 (9th Cir. BAP 1995).

-3-

failed to reflect the disposable income amount of $22,192.80 set forth in his Form B22C.[5] A hearing on Trustee's motion was set for May 19, 2011.

On May 2, 2011, Deutsche Bank National Trust Company ("Deutsche") filed an entry of appearance and request for special notice identifying itself as creditor appearing through its servicing agent, One West.

On May 12, 2011, Schnall moved to continue the hearing on Trustee's plan objection and motion to dismiss. In his supporting declaration, Schnall contended that a continuance on Trustee's motion was warranted because he believed that "the party who invoked Washington's Deed of Trust Act (attempted the foreclosure proceedings) is simply not the proper or legal party specified in the aforementioned statutory scheme; therefore, making the invocation of statutorily authorized foreclosure illegal."[6]

On that same date, Schnall also filed his response to Trustee's motion. Schnall asserted that "based on sound law and fact" the mortgage debts were unsecured and that Trustee's motion should be denied so he could proceed to challenge BAC's proof of claim. Schnall failed to explain why the mortgage debts were "unsecured" or explain why his plan failed to provide for any monthly payments or the amounts in arrears. Attached to his response was an April 6, 2010 appraisal of the residence for

---

[5] Trustee also objected to Schnall's Schedule J claimed expense of $1,100 for monthly home maintenance as excessive and unreasonable.

[6] Schnall set the hearing for his motion to continue on May 19, 2011 - the same day as Trustee's motion.

-4-

$440,000, receipts for some pet expenses, and print-outs from the Internet regarding guidelines for yearly home maintenance and repair costs.

Also on May 12, 2011, Schnall filed an objection to the proof of secured claim filed by "MERS." Notably, MERS never filed a proof of secured claim in Schnall's bankruptcy case. Although the objection purported to set a hearing on the matter for May 19, 2011, no notice of hearing was filed, and nothing indicates that Schnall served any party with notice of the claim objection.

On May 13, 2011, Deutsche filed an objection to confirmation of Schnall's chapter 13 plan for failing to provide any payments on its secured claim. Deutsche contended that Schnall had executed a $460,000 note and a deed of trust to secure the note in favor of Quicken Loans on October 30, 2006. Deutsche claimed to be the holder of the note and asserted that the principal balance due was approximately $460,000, with prepetition arrears of $71,933.69 and an ongoing monthly payment of $3,417.92. Deutsche did not include any supporting documents or affidavits with its objection.

The hearing on Trustee's motion proceeded on May 19, 2011. Trustee contended that even if Schnall was able to strip off BAC's second lien due to the residence's value being less than the amount of Deutsche's first lien, the monthly payment on the Deutsche loan alone was $3,417.92. When added to its prepetition arrearage of approximately $72,000 and the projected disposable income figure of $22,192.80, Trustee contended that Schnall's plan required a payment of about $5,500 per month. Thus, Schnall's plan proposing payments of only $2,200 per month was not feasible.

Counsel for Deutsche briefly noted its objection to confirmation for the plan's failure to propose any monthly payments on its claim or to cure the arrearages.

Before allowing the parties to proceed further, the bankruptcy court denied Schnall's motion to continue Trustee's motion for failing to set forth any grounds for continuance. Hr'g Tr. (May 19, 2011) at 4:18-5:4. Simply needing more time due to his pro se status was insufficient. Id. The court then addressed Schnall's claim objection, ruling that it was not being heard that day since it was not properly noticed. The court further explained to Schnall that MERS's potential involvement with one or both loans did not make the secured liens disappear:

> So you would still need to deal with -- and I don't know if this is a case where we have any confusion over who the right lender is or not. But whoever it is, you're going to have to deal with the full amount of your secured debt, unless the value of the property is such that you're entitled to start an action to strip a junior lien off. And it's not clear to me what you've got right now regarding that.
>
> So if you're going to keep the house, if that's the whole point of filing the Chapter 13, then you need to have enough income to make enough payments to make the secured payments or at least make the payments or at least make the payment on the first if you think you have grounds to strip the second. So that's what I need to hear about.

Id. at 5:14-6:2.

Schnall asserted that he had good cause to list the mortgage debts as unsecured. Schnall further contended that he did not acquiesce to the validity of the mortgage claims and to require him to do so as a condition of bankruptcy protection denied him the opportunity to contest the claims as secured and deprived him of due process. In light of the first lien's value at $460,000, Schnall observed that he could strip off the second lien due to

-6-

the residence's value of $440,000.  Schnall also explained that a prior attempt to modify the first mortgage with One West was unsuccessful.  Schnall then requested that he be allowed to continue making the plan payments as proposed, and that the court allow him to commence an "adversary proceeding" against the two mortgage creditors in state court.  Schnall made note of Deutsche's failure to file a proof of claim.  The bankruptcy court explained to Schnall that it was more concerned with Trustee's objection to the plan, as opposed to Deutsche's, even though the two raised some similar objections.

In a colloquy with the court, Schnall admitted the monthly payment on the first mortgage was about $3,500 per month.  Id. at 10:5-10.  Schnall then admitted that his monthly income was $5,000.  Id. at 10:11-13.  Trustee informed the court that Schnall's Schedules I and J (which did not include any rent or home mortgage payments) reflected figures of $4,815 and $2,885 respectively, thus leaving a monthly net income figure of $1,980. Id. at 10:20-23.  Determining that Schnall lacked sufficient income to even cover payments on the first mortgage, and that no loan modifications were pending or approved, the bankruptcy court concluded that Schnall's proposed plan was inherently infeasible and it dismissed the case.  Id. at 10:24-11:7.

Before the dismissal order was entered, Schnall filed a motion for reconsideration on May 31, 2011.  Although difficult to discern, the basis of Schnall's motion was that Trustee erroneously accepted Deutsche's contention, without any proof, that it was owed $3,417 per month on the first mortgage, and therefore the bankruptcy court in turn erred by relying on this

-7-

information to dismiss the case. Schnall contended that he had a valid basis to list the mortgage claims as unsecured, and because Deutsche failed to file a proof of claim or any other evidence to establish its claim, then it was subject to the proposed plan. In other words, Schnall asserted that because he listed the mortgage claims as unsecured, and because Deutsche never filed a proof of claim, the mortgage claims were unsecured.

Schnall's motion argued extensively about how he was denied due process and equal protection for not being allowed to challenge Deutsche's Notice of Default ("NOD") and its pending foreclosure proceeding. Specifically, Schnall took issue with the fact that the deeds of trust reflected MERS as the original beneficiary, but the NOD reflected Deutsche as the beneficiary. Therefore, according to Schnall, Deutsche had failed to establish standing to conduct the foreclosure sale, which was set for June 10, 2011. Attached to Schnall's motion for reconsideration were copies of the first and second deeds of trust, the executed $460,000 note securing the first deed of trust, the NOD, and the mortgage modification offer faxed to Schnall by One West on July 28, 2010. The NOD, filed by Regional Trustee Services Corporation on behalf of Deutsche and dated August 24, 2010, reflects Deutsche as One West's successor in interest to the first deed of trust. According to the NOD, no payments had been made on the Deutsche note since August 2009, and the payments due on the note were, depending on the interest rate applied, $3,451.69 or $3,487.24 per month.

The bankruptcy court subsequently entered an order denying confirmation of the plan and dismissing Schnall's case on June 1,

2011. On June 28, 2011, the bankruptcy court entered an order denying Schnall's motion for reconsideration, which it construed as a motion under Rule 9023. The court rejected Schnall's suggestion that its ruling to deny confirmation and dismiss the case relied on misinformation provided by Trustee or Deutsche; its ruling was based on information provided in Schnall's own Schedules I and J and on statements he made on the record. The court also found that Schnall's due process rights were not violated because he received proper and timely notice of Trustee's motion, he was given an opportunity to present his arguments at the May 19 hearing, and no issues other than confirmation and dismissal were before the court on that date. The court noted that Schnall was free to pursue any causes of action he may have regarding his mortgages in an appropriate forum. Schnall timely appealed.[7]

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 157(b)(2)(L) and 1334. We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court abuse its discretion when it denied

---

[7] Trustee contends that Schnall's notice of appeal of the June 1, 2011 dismissal order was untimely. We disagree. Under Rule 8002(b), if any party makes a timely motion under Rule 9023 (and others), the time for appeal for all parties runs from the entry of the order disposing of that motion. Here, Schnall filed a timely (even though premature) motion for reconsideration of the June 1 dismissal order on May 31, 2011. The bankruptcy court did not enter the order denying Schnall's motion for reconsideration until June 28, 2011. Schnall filed his notice of appeal on July 12, 2011. Thus, Schnall's appeal was within the 14-day period specified under Rule 8002(a).

confirmation of Schnall's chapter 13 plan and dismissed his case?

2.     Did the bankruptcy court abuse its discretion when it denied Schnall's motion for reconsideration?

### IV. STANDARDS OF REVIEW

We review the bankruptcy court's ultimate decision to confirm or not to confirm a reorganization plan for an abuse of discretion.  Computer Task Group, Inc. v. Brotby (In re Brotby), 303 B.R. 177, 184 (9th Cir. BAP 2003).  We also review for abuse of discretion a bankruptcy court's decision to deny a motion for reconsideration.  Arrow Elecs., Inc. v. Justus (In re Kaypro), 218 F.3d 1070, 1073 (9th Cir. 2000).

To determine whether the bankruptcy court abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and, (2) if it did, whether the bankruptcy court's application of the legal standard was illogical, implausible or "without support in inferences that may be drawn from the facts in the record."  United States v. Hinkson, 585 F.3d 1247, 1261-62 (9th Cir. 2009)(en banc).

We may affirm on any ground supported by the record.  Shanks v. Dressel, 540 F.3d 1082, 1086 (9th Cir. 2008).

### V. DISCUSSION

**A.     The bankruptcy court did not abuse its discretion when it denied confirmation of Schnall's chapter 13 plan and dismissed his case.**

Schnall raises several arguments on appeal.  He primarily argues that the bankruptcy court abused its discretion in denying confirmation of the plan and dismissing his case without first determining the validity of the mortgage creditors' claims.

-10-

Essentially, Schnall contends that without addressing the creditors' "standing" to conduct the pending foreclosure sale, the court's denial of the plan, a plan based on invalid claims, was improper and denied Schnall due process. We reject Schnall's arguments.

**1. Standing and proof of claim.**

Despite his belief to the contrary, Schnall's attempt to turn the mortgage creditors' secured liens into unsecured ones by scheduling them as unsecured and "disputed" in his Schedule F was ineffective. Merely scheduling claims as unsecured or filing claim objections did not "avoid" the liens. Schnall had to take affirmative steps under § 506(d)(2) to avoid the mortgage liens, at least BAC's lien, which he did not do. Therefore, the liens remained secured for purposes of Schnall's chapter 13 plan.

An unsecured creditor is required to file a proof claim for its claim to be allowed, but filing is not mandatory for a secured creditor. See FRBP 3002(a). A secured creditor may bypass the debtor's bankruptcy proceeding and look to its lien for satisfaction of the debt. Brawders v. Cnty. of Ventura (In re Brawders), 503 F.3d 856, 872 (9th Cir. 2007). This is the principle that secured liens pass through bankruptcy unaffected. Long v. Bullard, 117 U.S. 617, 620-21 (1886); Dewsnup v. Timm, 502 U.S. 410, 418 (1992); In re Brawders, 503 F.3d at 872. Contrary to Schnall's contention, Deutsche did not have to file a proof of claim to preserve its secured lien against his residence. In re Brawders, 503 F.3d at 872; Cen-Pen Corp. v. Hanson, 58 F.3d 89, 93 (4th Cir. 1995)(interpreting § 506(d)(2) to conclude that failure of secured creditor to file a proof of claim is not a

-11-

basis for avoiding its lien); Meadowbrook Estates v. McElvany, Inc. (In re Meadowbrook Estates), 246 B.R. 898, 902 (Bankr. E.D. Cal. 2000)("A secured creditor is not required to file a proof of claim. And if it chooses not to file a claim, its lien will pass through the bankruptcy and remain in place."). Therefore, despite not filing a proof of claim or challenging Schnall's scheduling of its debt as unsecured, Deutsche's right to foreclose on the residence survived the bankruptcy.

In this case, BAC chose to file a proof of claim presumably because it knew its lien was entirely underwater and that Schnall had the ability to strip it off. Although Schnall had the right to object to BAC's claim under § 502(b), his objection was not properly noticed or served, so it was not heard by the court.[8] In any event, Schnall made no effort to strip off BAC's lien prior to confirmation. Thus, Schnall was required to treat BAC's claim as secured in the plan. See de la Salle v. U.S. Bank, N.A. (In re de la Salle), 461 B.R. 593, 602 (9th Cir. BAP 2011)(the claim

[8] Under LBR 9013-1(d)(2)(C), objections to claims shall be filed and served at least 30 days preceding the date fixed for hearing. See also FRBP 3007. Schnall filed his objection to "MERS's" proof of claim on May 12, 2011. MERS did not file a proof of claim. Presumably, Schnall was objecting to BAC's filed claim and Deutsche's claim (even though it did not file one) since the objection mentioned "MERS and other parties mortgage claim(s)." Although the objection referenced a hearing date of May 19, 2011, Schnall failed to file a notice of hearing. The lack of a proof of service also indicates the objection was never properly served. Even if Schnall had filed and properly served the required documents, his objection could not have been heard on May 19, only seven days after filing the objection.
We further observe that Schnall's claim objection was premised solely on his assertion that BAC and/or Deutsche lacked standing to enforce the note. Schnall has never disputed receiving the loans or signing the notes and deeds of trust. Moreover, no party other than Deutsche had commenced foreclosure proceedings on the residence.

-12-

objection procedure, which is separate and apart from plan confirmation, does not authorize debtors to reclassify a debt in their chapter 13 plan which was set forth in a properly filed proof of claim).

As for Deutsche, even if Schnall could show that someone other than Deutsche owns the debt secured by the first deed of trust, he was still required to make payments to Trustee and propose a plan complying with §§ 1322 and 1326 for the benefit of the proper creditor. The rights of the holder of the debt secured by a deed of trust on the debtor's primary residence cannot be modified in the plan. § 1322(b)(2).

Schnall's desire to litigate Deutsche's or BAC's "standing" did not excuse his obligation to make any payments to Trustee on account of the secured loans, or to propose a plan providing for any payments on the secured loans. Because Schnall intended to retain his residence, he was required under § 1322(b)(5) to provide for the cure of the prepetition arrearages within a reasonable time (in this case five years) and maintain his ongoing mortgage payments, subject to a later determination as to which entity actually held the note(s).[9] See §§ 1322(b)(5) and 1322(d). See also Alonso v. Summerville (In re Summerville), 361 B.R. 133 (9th Cir. BAP 2007)(where chapter 13 plan did not affect or address the validity of a note or deed of trust debtor was not precluded from challenging the validity of the note and deed of trust in subsequent state court action).

---

[9] We note that under Local Rule 3015-1(j), all plan payments Schnall would have made regarding the mortgage liens would have been paid directly to the chapter 13 trustee.

-13-

Section 1325(a)(5) requires debtors to provide for the payment of their secured claims in an amount equal to the claims absent consent of the secured creditors or surrender of the creditors' collateral. The record shows that Schnall did not have sufficient income to cover even the ongoing monthly payments to Deutsche on its debt, much less provide for the collective prepetition arrearages of nearly $90,000. Even if the mortgage debts were somehow deemed unsecured, thereby leaving Schnall with $440,000 of equity in his residence, Schnall failed to provide in his proposed plan for liquidation of the residence and to provide funds to pay his unsecured creditors. Apparently Schnall's plan was to simply keep his residence without making any payments on his loans and without liquidating the asset for the benefit of creditors. Clearly, this does not comply with the good faith provision of § 1325(a)(3). Accordingly, we conclude the bankruptcy court properly denied confirmation of his plan.

**2. Due process.**

Schnall argues his due process rights were violated when the bankruptcy court denied his continuance request and issued its "premature" decision to deny confirmation and dismiss his case without determining the validity of the mortgage creditors' claims. We disagree.

"The fundamental requisite of due process of law is the opportunity to be heard at a meaningful time and in a meaningful manner." Mathews v. Eldridge, 424 U.S. 319, 333 (1976). We have already determined that resolution of whether BAC and/or Deutsche were the proper parties entitled to enforce the notes was not necessary for plan confirmation purposes. Schnall's purpose for

-14-

continuing the Trustee's motion was to dispute the mortgage creditors' standing to foreclose on the residence and to avoid making any payments on the secured debt; it was not so he could in good faith amend his plan to include any mortgage payments or cure the prepetition arrearages as required.

Here, Schnall received notice of the hearing on Trustee's objection to his plan and motion to dismiss. Schnall timely filed a written response and included several exhibits. He also appeared at the May 19 hearing and presented oral argument. No other matters were being heard that day. Therefore, on this record, we conclude the bankruptcy court gave Schnall his full due process rights before it dismissed his case.

**3.    Dismissal under § 1307(c).**

Although the dismissal order does not state the statutory basis for dismissing Schnall's case, we believe cause existed for dismissal under § 1307(c)(5). That section provides in relevant part:

> (c) . . . on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including —
> . . .
>
> (5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan[.]

Section 1307(c) establishes a two-step analysis for dealing with questions of conversion and dismissal. "First, it must be determined that there is 'cause' to act. Second, once a determination of 'cause' has been made, a choice must be made

-15-

between conversion and dismissal based on the 'best interests of the creditors and the estate.'" Nelson v. Meyer (In re Nelson), 343 B.R. 671, 675 (9th Cir. BAP 2006)(citations omitted).

The record supports the bankruptcy court's decision to deny confirmation of Schnall's plan because he could not (and apparently refused to) submit a confirmable plan: (1) his income failed to cover the monthly payment on the first mortgage, much less the second, irrespective of the identity of the party with standing to enforce the note; (2) the plan impermissibly modified the rights of Schnall's secured creditors under § 1322(b)(2); and (3) the plan did not provide for monthly payments or for arrearages to be cured within a reasonable time in violation of § 1322(b)(5). Thus, Schnall's plan was not confirmable as a matter of law.

Second, the record shows that dismissal was in the best interests of the creditors and the estate. The only creditors that participated in the case were the two mortgage lien creditors and Schnall was in default by at least $90,000 between them. Schnall has had the benefit of occupying the residence without making any payments since July 2009. Therefore, the element of best interests of creditors resolves itself primarily to the interest of Deutsche and BAC, which are by far Schnall's largest creditors. Goodrich v. Lines, 284 F.2d 874, 877 (9th Cir. 1960) (in determining the best interests of creditors, the interest of a single creditor with a large enough claim will suffice). Schnall has not cited any authority that requires the bankruptcy court to rule on the merits of a mortgage lien creditor's standing before dismissing the bankruptcy case for other reasons. Schnall never

requested that his case be converted to chapter 7, and he does not challenge on appeal the court's decision to dismiss rather than convert. Accordingly, we conclude the bankruptcy court properly dismissed Schnall's case for cause under § 1307(c)(5).

**B. The bankruptcy court did not abuse its discretion when it denied Schnall's motion for reconsideration.**

Schnall offers no argument for how the bankruptcy court abused its discretion in denying his motion for reconsideration, other than simply contending in the conclusion of his opening brief that we should reverse the bankruptcy court's order. He also failed to present the matter as an issue on appeal. As a result, this issue is waived. Wake v. Sedona Inst. (In re Sedona Inst.), 220 B.R. 74, 76 (9th Cir. BAP 1998)(matters on appeal not specifically and distinctly argued in appellant's opening brief are waived). However, even if we did consider it, Schnall's motion did not present newly discovered evidence, demonstrate clear error, or show an intervening change in controlling law. See 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999)(setting forth grounds for reconsideration under FRCP 59(e), incorporated by Rule 9023). Instead, the motion impermissibly rehashed the same arguments already raised in his opposition to Trustee's objection to confirmation and motion to dismiss. Motions for reconsideration are not for rehashing the same arguments made the first time, or to assert new legal theories or new facts that could have been raised at the initial hearing. In re Greco, 113 B.R. 658, 664 (D. Haw. 1990), aff'd and remanded, Greco v. Troy Corp., 952 F.2d 406 (9th Cir. 1991). Thus, we conclude the bankruptcy court did not abuse its discretion in

-17-

denying Schnall's motion for reconsideration.

## VI. CONCLUSION

Based on the foregoing reasons, we AFFIRM.